KANSAS CITY, M. & O. RY. CO. OF TEXAS v. FINKE. (No. 575.)

(Court of Civil Appeals of Texas. El Paso. Nov. 28, 1916. Rehearing Denied Jan. 5, 1917.)

1. APPEAL AND ERROR ⬷999(3)—QUESTIONS OF FACT—CONTRIBUTORY NEGLIGENCE.

Where the proof is conclusive that a railroad and its employé were engaged in interstate commerce when the latter was injured, and the jury found on special issues the amount to which the employé's negligence contributed to his injuries, which was deducted from his damages by the court, the issue of contributory negligence is disposed of.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3923, 3924; Dec. Dig. ⬷999(3).]

2. APPEAL AND ERROR ⬷934(2)—PRESUMPTIONS—SPECIAL VERDICT—ISSUES NOT SUBMITTED.

Where the question of assumed risk was not submitted to the jury and not required by defendant, the issue will be resolved in support of a judgment for plaintiff rendered on special issues found by the jury, if there is any evidence to support such a finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ⬷934(2).]

3. TRIAL ⬷365(1) — SPECIAL ISSUES — ASSUMPTION OF RISK.

In an action for injuries to a roadmaster who ran his railroad motorcar into an open switch, special issues as to whether it was the custom when engines went upon the side track to get coal and water to leave the switch open, and whether plaintiff knew of such custom, did not submit the question of assumption of risk either under the Texas rule that he assumed the risk arising from his knowledge that the doing of the work in a particular way had become so common and habitual that he should know it would be followed on the particular occasion, or under the rule in the federal courts that he does not assume the risks arising from a knowledge of his master's methods of business or from a failure to use ordinary care to ascertain such methods.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 871; Dec. Dig. ⬷365(1).]

4. MASTER AND SERVANT ⬷219(4), 226(2) — INJURIES TO SERVANT—ASSUMPTION OF RISK — OBVIOUS DANGER — NEGLIGENCE OF EMPLOYER.

An employé assumes the risks of the dangers normally and necessarily incident to the occupation and of such others as he becomes aware of or as are so open and obvious that an ordinarily prudent person must necessarily have observed them, but does not assume risks arising from his employer's negligence if he does not know of such negligence and is not charged with knowledge thereof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 613, 662; Dec. Dig. ⬷219(4), 226(2).]

5. MASTER AND SERVANT ⬷288(12) — INJURIES TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR COURT.

The mere fact that a roadmaster ran his motorcar into an open switch, the position of which was correctly indicated by the switch target, does not charge him with assumption of risk of an obvious danger as a matter of law, but, at most, raises a jury question which will be presumed to have been found against defendant by the court where special issues, not including assumption of risk, were submitted to the jury, and judgment rendered thereon for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1083; Dec. Dig. ⬷288(12).]

6. MASTER AND SERVANT ⬷276(8), 278(18)— INJURIES TO SERVANT—NEGLIGENCE OF DEFENDANT—EVIDENCE.

In an action for injuries to a roadmaster who ran his motorcar into an open switch, evidence held sufficient to support the jury's finding that defendant was negligent in leaving the switch open, and that such negligence was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959, 970, 971; Dec. Dig. ⬷276(8), 278(18).]

7. TRIAL ⬷351(2)—SPECIAL ISSUES—ISSUES NOT SUBMITTED—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, requiring the court to submit all the issues made by the pleading, but providing that failure to submit any issue shall not require reversal of a judgment unless its submission was requested in writing by the party complaining of the judgment, and that upon appeal or writ of error an issue not submitted and not requested shall be deemed as found by the court in such manner as to support the judgment, if there is evidence to sustain such a finding, a judgment for plaintiff on special issues, which did not include assumption of risk, is not improper, where no issue on assumption of risk was submitted by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 837; Dec. Dig. ⬷351(2).]

8. EVIDENCE ⬷532 — EXPERT TESTIMONY — EXAGGERATION OF INJURIES.

In an action for personal injuries, testimony by a physician that it was recognized among the medical profession and in the books that there was such a thing as exaggeration of injuries, especially where they occurred as the result of accidents on railroads, in no way tended to prove that plaintiff had exaggerated his injuries, and was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2340; Dec. Dig. ⬷532; Damages, Cent. Dig. § 483.]

9. TRIAL ⬷260(1) — REQUESTED CHARGES — REPETITION OF GIVEN CHARGE.

There is no error in refusing requested charges when the issues were sufficiently covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ⬷260(1).]

10. MASTER AND SERVANT ⬷296(1) — INJURIES TO SERVANT—REQUESTED INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In an action under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, §§ 8657–8665), where special issues were submitted, including plaintiff's contributory negligence and the amount to which it contributed to his injury and the damages thereby reduced, it was not error to refuse a requested charge that it was plaintiff's duty to exercise ordinary care to avoid the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1180; Dec. Dig. ⬷296(1).]

Appeal from District Court, Knox County; Jo A. P. Dickson, Judge.

Action by C. A. Finke against the Kansas City, Mexico & Orient Railway Company of Texas. Judgment for the plaintiff, and defendant appeals. Affirmed.

H. S. Garrett, of San Angelo, and D. J. Brookreson, of Benjamin, for appellant. W. M. Moore, of Benjamin, and Ocie Speer, of Ft. Worth, for appellee.

HARPER, C. J. This is an appeal from a judgment in favor of plaintiff (below) for $3,000, with legal interest from date thereof.

For cause of action plaintiff pleaded that on or about February 17, 1915, while acting as roadmaster for defendant, he was making his usual trip over the road in a motorcar furnished by defendant, prosecuting his duties of inspection, and while in the exercise of proper care, without fault upon his part, and without notice, he ran into an open switch, his car was derailed, and by reason thereof he was injured; that the switch being open and disconnected was negligence upon the part of defendant and the proximate cause of the accident and injury.

Defendant answered that it was engaged in interstate commerce at the time of the accident, and that plaintiff was an employé of the defendant in such commerce within the meaning of the act of Congress of April, 1908; that it was plaintiff's duty to see that the track was in proper condition, including the side tracks and switches in Hamlin, and that switch targets, including the one in question, were in such condition that they could be readily seen several hundred yards away by persons approaching; also that switches, including the one in question, were closed when it was customary or necessary that same be closed; that at the time of the accident the switch target in question was in first-class condition so that it could have been seen by plaintiff with ordinary care several hundred yards away and in time to have avoided the accident; if it was not in such condition, this was plaintiff's fault; that the switch in question opened upon a coal and water track upon which engines went to obtain coal and water for use in hauling trains engaged in interstate commerce; that at and prior to the accident it was customary where engines went on the switch track for coal and water to leave the switch open until their return, with which custom plaintiff was, or should have been in connection with his duties, fully familiar; that at the particular time of the accident a road engine hauling freight between California and Kansas had gone on the switch track to obtain coal and water for use in such carriage; that plaintiff knew or should have known of such facts, even without being apprised thereof by the switch target itself; that, notwithstanding all these facts, plaintiff undertook to run a motorcar at a dangerously rapid rate of speed north from Hamlin past the switch track, although he well knew, or with ordinary care for his own safety should have known, and in accordance with his duty as an employé should have known, that the switch was open at the time; that in addition plaintiff could have discovered the open switch with ordinary care, and it was his duty to do so under the rules of railroading and in accordance with his duties, in ample time to have stopped the motorcar, because the switch target clearly disclosed, in the usual manner, that the switch was open; yet plaintiff ran into the switch in gross violation both of the duty he owed to himself and to the property in his charge and of the universally accepted rules of defendant and principles of railroading; that therefore the accident and injuries resulted solely from the risk assumed by plaintiff in connection with his employment, and especially in undertaking to run the motorcar over the track at such speed under the conditions then existing.

The cause was submitted by special issues. The questions submitted and the answers thereto are as follows:

"No. 1. Was the defendant, acting by and through its servants or employés, guilty of negligence in leaving the switch open, into which the plaintiff ran? Answer: Yes.

"No. 2. If you have answered Issue No. 1 in the affirmative, then answer the following issue: Was such negligence, if any you have found, upon the part of the defendant, the proximate cause of the accident to the plaintiff? Answer: Yes.

"No. 3. Was the plaintiff injured as a result of the accident in question? Answer: Yes.

"No. 4. Was the plaintiff guilty of negligence in running into the switch, under the circumstances surrounding the plaintiff at the time of the accident? Answer: Yes.

"No. 5. How much damage has the plaintiff sustained, if any, by reason of the accident in question and the injuries received, if any, by him, by reason of said accident, if any? Answer: $8,000.

"No. 6. If you have answered the fourth issue in the affirmative, then answer the following issue: Was plaintiff's negligence the sole proximate cause of the accident and the injuries, if any, to the plaintiff? Answer: No.

"No. 7. If you have found in answer to issues Nos. 4 and 6 that plaintiff was guilty of negligence in running into the open switch, and that such negligence, if any, contributed to cause the said accident and injuries, if any, occasioned plaintiff by reason thereof, then answer the following: How much in dollars and cents did plaintiff's contributory negligence, if any, contribute to the damage, if any, sustained by the plaintiff? Answer: $5,000.

"No. 6a. If in answer to Issue No. 4 you have found that the plaintiff was guilty of negligence in running into the said open switch, then state whether such negligence contributed to the accident and injuries, if any? Answer: Yes."

Special issues submitted at request of defendant:

"1. Was it the custom where the engines went in upon the side track to get coal and water to leave the switch open until the engine came out? Answer: Yes.

"2. If you have answered the above question, No. 1, in the affirmative, then say: Did plaintiff, C. A. Finke, know of such custom, or should he have known of such custom by the exercise of ordinary care? Answer: Yes."

Upon which judgment was entered for plaintiff.

Appellant's first, second, fourth, fifth, sixth, seventh, and eighth assignments urge that under the undisputed facts and the find-

ings of the jury the court erred in refusing to instruct a verdict for defendant, because: (a) The undisputed proof is that defendant railway company and plaintiff, as its employé were engaged in interstate commerce within the meaning of the act of Congress as pleaded; (b) that there is no pleading or evidence to charge or show that the injuries resulted from or were contributed to by the violation by the defendant of any statute enacted concerning safety appliances for the protection of employés; (c) and that the undisputed proof shows that the plaintiff assumed the risk; and (d) that it was because of his own negligence that the accident and consequent injuries occurred; (e) that there is no evidence of negligence upon the part of defendant.

[1] The proof is conclusive that the defendant and plaintiff, as its employé, were engaged in interstate commerce, and there is no evidence to the contrary; so this question was not required to be submitted to the jury. Therefore, the jury having found that plaintiff was guilty of contributory negligence, his recovery is reduced from $8,000 to $3,000. The issue of contributory negligence is disposed of. The question of violation of statute requiring safety appliances is not in this case by either pleading or proof.

[2] Since the question of assumed risk as a defense was not submitted to the jury and not requested by appellant, the issue will by this court be resolved in favor of or in support of the judgment, if there is any evidence to support such a finding by the trial court.

[3] But appellant urges that the questions submitted upon its request submitted the issue, and that the answers thereto constitute a finding for the defendant. The effect of the questions and answers, at most, is that the defendant's trainmen had adopted the custom of leaving the switches open when they ran trains upon side tracks until they came back on the main line, and that plaintiff knew of such custom, or should have known of it by the exercise of ordinary care. Under the Texas authority relied on by appellant, Railway Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669, this would not be equivalent to submission of the question of assumed risk arising by reason of plaintiff's knowledge of a customary doing of a negligent act. It must go further, be a submission of the issue and a finding by the jury that "the doing of the work" in a particular way had become "so common and habitual that the employé should know that it will be followed on the particular occasion," and not simply that he should have known of such custom by the exercise of ordinary care. But under the rule laid down by the United States Supreme Court in T. & P. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, the employé does not subject himself to risks arising from a knowledge of his master's methods of business or from a failure to use ordinary care to ascertain such methods. T. & P. Ry. Co. v. Eberheart, 91 Tex. 321, 43 S. W. 510; M., K. & T. Ry. Co. v. Crowder, 55 S. W. 380.

[4] The employé assumes the risks of the dangers which are normally and necessarily incident to the occupation and of such others as he becomes aware of and appreciates, and of such as are so open and obvious that an ordinarily prudent person under the circumstances must necessarily have observed and appreciated. But he does not assume the risks which arise out of the failure of the employer to exercise due care with respect to providing a safe place of work, provided he does not know of such failure, or be charged with knowledge thereof.

[5] Appellant urges that appellee, by the evidence, is brought within the rule that the danger of running into an open switch must have been known to him, and, further, that by reason of the custom obtaining at this particular switch of leaving it open, the further fact that the switch target at this time indicated that the switch was open made the danger of running into it so open and obvious that a man of his experience must necessarily have been so charged with the knowledge of both defects and dangers as to bring him within the rule of assumed risk as a matter of law, and that therefore the court should have instructed a verdict for it.

In order to determine whether this contention of appellant is sound, it seems necessary to quote some of the evidence relied on by appellee as supporting the verdict of the jury in his favor:

Plaintiff testified:

That he was roadmaster for defendant at the time of his accident, and was in the active discharge of his duties as such. "As roadmaster, it was my duty to look after the road, its switches and side tracks, to see that they were properly lined up, and that the track was in good condition. If there was anything the matter with the switches, tracks, or side tracks, it was my duty to fix it up. I did not have charge of opening the switch. Do not know about the engines getting water; that was not my business. I had nothing to do with the locomotives. It was my business to keep up with the trains which ran over the road so I could go along where a heavy train had run over the road and see whether or not the heavy engine or train had knocked the track out of line, etc., but I did not know about the operation of the trains. When this accident occurred on the 17th day of February, 1915, I was making a trip over the railroad inspecting the track. I had my eye on the track all the time, and we run into an open switch. During my 25 or 30 years of railroad business, I have been section foreman, extra gang foreman, and head roadmaster. I am acquainted with the usual and customary practice of railroading on the Orient Railroad here in vogue at the time of the injury. I will state that the main line switches, such as I run into and caused this accident, are supposed to be closed all the time. If a train comes into a place where there is a switch the brakeman opens that switch. I will state that, if a train comes along and it comes to the switch, just exactly the same switch in question here, the one I run into, wants to use

that switch, runs in on it, runs down the switch, if it is going to be gone for 15 or 20 or 30 minutes, any considerable length of time like that, the usual and customary practice with reference to leaving the switch open or closed is that it is supposed to be closed. There was no switchman at or near this switch I run into at the time of the accident. The train crew was down at the roundhouse. I do not know how far that is, but I suppose it is close to one-fourth of a mile. I had been roadmaster two years when this accident occurred. I was in charge of that motorcar and boss of it, but I did not see that target, because I was looking at the track, which I always did, in front of me. I wasn't looking ahead, of course. I had no idea the main line switch was open until I looked up and went into it. Q. You knew at the time that that locomotive did go into that switch track, didn't you? A. Yes, sir; but they always shut up. It is not a fact that main line switches are sometimes left open temporarily where there is going to be switching done, after you get away from the main line they are shut. When a train goes in on a switch and is switching and intends to come right back out, there is a man left at the target to watch it. A main line switch is not left open temporarily. If they do switching in and out, there is always a man at the target, if they do that, always a man there to line it up for them; if they go a quarter of a mile, or anything like that, they generally shut them, supposed to."

As stated above, we conclude that the custom of leaving the switch open has no bearing upon the question of assumed risk; so we then are confined to the one fact admitted, the open switch as indicated by the switch target, upon which the defendant can rely in support of its defense that the danger was so open and obvious that an ordinarily prudent person under the circumstances must necessarily have observed and appreciated it. In other words, is the fact that the switch target (placed there for the purpose) was in good condition and showed that the switch was open and his failure to see it alone sufficient to charge plaintiff with assumed risk as a matter of law? If there is evidence that plaintiff knew that there was an engine on the side track in question, which is doubtful, he, in effect, says that he had no reason to apprehend that those who ran such engine off the main line onto the side track would leave it open, for he says it was supposed to be closed all the time, and he also says that he did not know that it was open, and the fact that he ran into it conclusively shows that he did not know that it was open. So, under the circumstances as he relates them, he was justified in going about his business in the usual way relying upon the master's other employés performing their duty to close the switches so as to leave his place of work, the main track, safe for him to pass over it. So we cannot hold that the mere fact that the switch target showed the open switch and his failure to observe it charges him with assumed risk as a matter of law, but was sufficient to raise a jury question, and, if not submitted to the jury, to be determined by the court.

The circumstances surrounding the open switch and plaintiff's failure to observe it in the performance of his duties seem to be the only facts upon which to base a charge and the finding of the jury that plaintiff was guilty of negligence, which was submitted and found in favor of defendant, and the damages reduced accordingly.

[6] And it seems equally clear that the facts and circumstances above detailed are sufficient to support the court's charge and the finding of the jury on the question of defendant's negligence and liability to plaintiff for his accident and injuries.

[7] The third assignment is that the judgment was improper, etc., because rendered upon verdict of a jury which does not dispose of the material issues in the case as made by the pleadings and testimony. As stated next above, this case was submitted upon special issues under article 1985, Vernon's Sayles' Statutes, which reads:

"The special verdict must find the facts established by the evidence, and not the evidence by which they are established; and it shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleading. But the failure to submit any issue shall not be deemed a ground for reversal of the judgment, upon appeal or a writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment: Provided, there be evidence to sustain such a finding."

The issue of assumed risk was not submitted, nor was it requested; so, having concluded that there is evidence to support a finding by the trial court (in support of its judgment) that plaintiff did not assume the risk, we cannot reverse this case upon the ground urged in this assignment, and the same rule applies to all other issues not submitted, if not requested.

[8] The ninth is that the court erred in refusing to permit counsel to interrogate a physician upon the subject as to whether or not he did not know and that it is recognized among the medical profession and in the books upon the subject that there is such a thing as exaggeration of injuries, especially where injuries occurred as a result of accidents on railroads or in connection with other public service corporations.

The appellant refers us to no bill of exceptions which shows that the witness would have testified as appellant indicated. But suppose the witness would have so testified, the fact that a witness would testify that it is common to exaggerate the injuries is in no way proof that the injuries in this case have been exaggerated by the plaintiff; so the court did not err in sustaining the objection to the testimony.

[9] The tenth, eleventh, twelfth, thirteenth, fourteenth, and sixteenth assign error in the charge of the court as given and in refusing charges requested. The issues were sufficiently covered by the charge given copied above.

[10] The seventeenth is that the court erred in refusing special charge to the effect that it was the duty of plaintiff to exercise ordinary care to avoid the accident, and it was not error to refuse to give it.

The eighteenth to the twenty-fourth assignments complain of various matters, the charge of the court, the findings of the jury in answer to special issues submitted, etc. After due consideration of each and all, there appears to be no reversible error.

WALTHALL, J., does not fully concur in that portion of the above opinion relative to assumed risk.

Affirmed.