**MISSOURI PAC. R. CO. v. JONES.**
(No. 1301—5380.)

Commission of Appeals of Texas, Section A.
Feb. 5, 1930.

Leake, Henry, Wozencraft & Frank, of Dallas, for plaintiff in error.

S. P. Jones and Franklin Jones, both of Marshall, and Wright Patman, of Texarkana, for defendant in error.

SHARP, J. Franklin Jones, administrator of the estate of J. L. Peace, sued the Missouri Pacific Railroad Company for damages caused by the death of J. L. Peace, an employee of the railroad company, by reason of the collision between two of the railroad's trains on the main line near the town of Norphlet, Ark., and recovered a judgment against the railroad company in the sum of $15,825. This case is within the Federal Employers' Liability Act of April 22, 1908, c. 149, § 1, 35 Stat. 65, Code, Title 45, § 51 (45 USCA § 51). The Missouri Pacific Railroad Company appealed to the Court of Civil Appeals for the Sixth Supreme Judicial District, and the case was affirmed. 12 S.W.(2d) 1050.

The railroad company applied for a writ of error, which was granted.

We refer to the opinion of the Court of Civil Appeals in this case, and for a partial

statement of the nature and result of this suit we adopt the following:

"J. L. Peace, a locomotive engineer, was killed in a collision between two of appellant's trains on the main line near the town of Norphlet, Ark. At the time of the collision, Peace was one of the appellant's engineers and in charge of engine No. 95, which was moving south pulling three tank cars. Engine No. 1278 was backing north on the same track, pulling several box cars attached to its front end. Both trains were intending to take a siding in order to allow another train to pass which was due within a few minutes. The two trains above mentioned came together on a curve in the track. As a result, Peace was killed. He left a wife and some minor children. This suit was filed by Franklin Jones as administrator of the estate of Peace, to recover damages. It is conceded that the colliding trains were engaged in interstate commerce, and that the rights and liabilities of the parties are governed by the Federal Employers' Liability Act. * * *

"The proof shows that at the time the collision occurred a brakeman was riding in the engine cab with Peace (the engineer) and the fireman. The administrator charged negligence on the part of the crew operating engine No. 1278, and also charged negligence on the part of the fireman and brakeman who were in the cab with Peace, in failing to keep a lookout for trains approaching from the opposite direction. Among the regulations adopted and promulgated by the appellant was rule No. 93, which is as follows:

" 'Rule 93. Within the yard limits the main track may be used, protecting against first-class trains. Second and inferior class and extra trains must move within yard limits prepared to stop unless the main track is seen or known to be clear.'

"It is admitted by both parties to this suit that the above rule was applicable to both of those trains at the time the collision occurred. They were of the same class and were moving on the main line within the yard limits of Norphlet. It was the duty of each crew to observe and obey that rule.

"On special issues submitted, the jury found the following facts:

" '1. That the operatives of the train drawn by engine No. 1278 at the time and just before the collision were violating Rule 93, and that this violation of the rule was a proximate cause of the collision with the train drawn by engine No. 95.

" '2. That Peace, in operating engine No. 95 and just before and at the time of the collision, was also violating Rule 93, and that such violation contributed to cause the collision. \

" '3. That the fireman on engine No. 95 was not guilty of negligence in failing to observe the approach of engine No. 1278; but that the

brakeman, Harvey, who was riding in the cab with Peace, was guilty of negligence in failing to keep a lookout for approaching trains, and that such negligence was a proximate cause of the collision.'

"In response to other interrogatories the jury assessed the total damages resulting from the death of Peace at $23,738. They fixed the amount due to his contributory negligence at $7,913. Upon those answers the court rendered a judgment against the appellant for $15,825.

"The sufficiency of the evidence to support the special findings of the jury is not questioned in this appeal. The appellant, however, claims that it was entitled to a peremptory instruction in its favor, or a judgment notwithstanding the findings of the jury. That contention is based upon the proposition that the evidence as a whole conclusively showed that the death of Peace was primarily due to his own negligence in failing to comply with the rules of the company. As supporting that contention, appellant refers to several cases decided by the United States Supreme Court, among which are the following: Davis v. Kennedy, Adm'x, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212; Frese v. Chicago, B. & Q. R. Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Chesapeake & O. R. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513."

■ Counsel for the railroad company contend that in view of the record in this case and the foregoing opinions of the Supreme Court of the United States, it should be held, as a matter of law, that the negligence of the locomotive engineer, Peace, was the sole cause of his injury and death, and that there is no right of recovery for his death under the Federal Employers' Liability Act. We cannot agree to this contention. We think the facts of this case distinguish it from the facts contained in the opinions of the Supreme Court of the United States above cited. In those cases it appears that the negligence of the injured person was the sole cause of his injury, and consequently the court was justified in holding, as a matter of law, that there was no ground for recovery; but in this case we feel, under all the circumstances, that it was a question for the jury to pass upon. The court submitted to the jury various issues of negligence on the part of the employees of the railroad company at the time of the collision, and the jury found that the other employees were guilty of negligence and that was the proximate cause of the injury to Peace. The jury also found that Peace was guilty of negligence. The issue of the sole cause of the injury to Peace was not submitted to the jury. Under all the facts and circumstances connected with this case, we do not think that it could be said, as a matter of law, that the negligence of Peace, the engi-

neer, was the sole cause of his injury and death. Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838; Lancaster v. Fitch, 112 Tex. 293, 246 S. W. 1015, 1017; Dallas Ry. Co. v. Warlick et al. (Tex. Com. App.) 285 S. W. 302.

In the case of Lancaster v. Fitch, supra, the Supreme Court, in that opinion, says: "It is often difficult for a court, as a matter of law, to determine the proximate cause of an injury. Ordinarily it is a question of fact, to be determined by the court or jury trying the case; and, where a given state of facts might cause reasonable minds to differ as to whether or not it was the producing and proximate cause of the injury, the court will not disturb their verdict."

■ Counsel for the railroad company contend that the trial court committed error in refusing to submit to the jury the issue of assumed risk by Peace and requested the, court to submit to the jury the following issue: "Did J. L. Peace assume, under the circumstances and conditions in evidence before you, the risk of the collision which occurred between his engine, which was engine No. 95, and the other engine, which was engine No. 1278?"

The court refused to submit to the jury the foregoing issue and never submitted to the jury the issue of assumed risk by Peace in any form. The testimony shows that Peace was an experienced engineer and had been working for the railroad company for some time; that he was familiar with the kind and character of work he was engaged in at the time of his death; that he had been instructed and examined with reference to the rules adopted by the railroad company for the conduct of employees operating trains and engines at this place; that he knew that a passenger train was about due at the place of the collision; that he knew there was a curve in the track at that place; and that it was his duty to keep his engine under control. The evidence for the railroad company further tended to show and prove that engine No. 1278 at the time of the collision had been stopped; that the engine operated by Peace was a much lighter one and was hauling fewer cars than engine No. 1278, and the impact between the two engines was such that the engine Peace was operating shoved engine No. 1278 and the cars connected therewith for some little distance. The evidence introduced by the railroad company further tended to show that if Peace had looked out of the cab window of his engine in a proper way, he could have seen engine No. 1278, and if he had been observing the rules or had his engine under control, he could have stopped his engine and prevented the collision. Under all of the conditions and circumstances connected with the collision, we think this record raised the issue of assumed risk on the part of Peace, the locomotive en-

gineer, and the court erred in not submitting this issue to the jury. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 639, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Boldt v. Penn. R. R. Co., 245 U. S. 441, 38 S. Ct. 139, 140, 62 L. Ed. 385; K. C. M. & O. Ry. Co. of Tex. v. Finke (Tex. Civ. App.) 190 S. W. 1143, 1145, certiorari denied by the Supreme Court of the United States, 245 U. S. 656, 38 S. Ct. 13, 62 L. Ed. 534; T. & N. O. R. R. Co. v. Cammack (Tex. Civ. App.) 280 S. W. 864, 868, certiorari denied by the Supreme Court of the United States, 273 U. S. 720, 47 S. Ct. 111, 71 L. Ed. 858.

In the case of Seaboard Air Line Ry. v. Horton, supra, the Supreme Court of the United States says:

"It seems to us that § 4 [45 USCA § 54] in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And, taking §§ 3 and 4 [45 USCA §§ 53, 54] together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.

"The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman,—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not."

In the case of Boldt v. Pennsylvania R. R. Co., supra, the Supreme Court of the United States in that opinion says:

"In Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 639, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, we said: 'It seems to us that section 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action.' Jacobs v. Southern R. R. Co., 241 U. S. 229, 235, 36 S. Ct. 588, 60 L. Ed. 970.

"At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him. Shearman & Redfield on Negligence (6th Ed.) § 208; Bailey, Personal Injuries (2d Ed.) § 385. This general doctrine was clearly recognized in Gila Valley, etc., Ry. Co. v. Hall, 232 U. S. 94, 101, 34 S. Ct. 229, 58 L. Ed. 521; Jacobs v. Southern R. R. Co., supra; Chesapeake & Ohio Ry. v. De Atley, 241 U. S. 310, 313, 36 S. Ct. 564, 60 L. Ed. 1016; and Erie R. R. Co. v. Purucker, 244 U. S. 320, 324, 37 S. Ct. 629, 61 L. Ed. 1166.

"The request in question did not accurately state any applicable rule of law and was properly refused. Already the jury had been told that deceased assumed the ordinary risks of his employment—a statement more favorable than plaintiff could properly demand. The risk held to have been assumed in the Horton Case certainly arose from negligence of some officer, agent, or employee; and if the negligence of all these should be excluded in actions under the Employers' Liability Act, it is difficult to see what practical application could ever be given in them to the established doctrine concerning assumption of risk."

In the case of K. C. M. & O. Ry. Co. v. Finke, supra, the court, in rendering that opinion, held as follows: "The employee assumes the risks of the dangers which are normally and necessarily incident to the occupation and of such others as he becomes aware of and appreciates, and of such as are so open and obvious that an ordinarily prudent person under the circumstances must necessarily have observed and appreciated.

The court further said: "So we cannot hold that the mere fact that the switch target showed the open switch and his failure to observe it charges him with assumed risk as a matter of law, but was sufficient to raise a jury question, and, if not submitted to the jury, to be determined by the court."

In the case of T. & N. O. R. R. Co. v. Cammack, supra, the court, in rendering the opinion in that case, said: "The court left to the jury the decision of whether or not the appellee assumed the risk of the 'negligence' of his coemployees operating the engine. The court specially informed the jury that the appellee assumed the risk of 'negligence known to him, or when such negligence is so plainly discoverable as he must have known thereof.'"

The trial court submitted to the jury issues Nos. 5, 6, and 7, which read as follows:

"No. 5. Do you believe from the evidence that the fireman on Engine No. 95, at the time of and just before the collision, was guilty of negligence in failing to see the approach of the train drawn by Engine No. 1278, and signal his engineer in time to have stopped before colliding with said engine No. 1278?

"No. 6. Do you believe from the evidence that the brakeman riding on Engine No. 95, at the time of and just before the collision, was guilty of negligence in failing to keep a lookout for approaching trains?

"No. 7. If you have answered both Special Issues No. 5 and No. 6, 'no,' you need not answer this issue. If you have answered either or both said Special Issues No. 5 and No. 6, 'Yes,' then answer the following:

"Do you believe from the evidence that the negligence of the fireman or brakeman, either or both as you may have found, was a 'proximate cause,' as that term has hereinbefore been defined to you of said collision?"

To issue No. 5, the jury answered, "No." To issue No. 6, the jury answered, "Yes," and to issue No. 7 the jury answered, "Yes." Timely objections were made by counsel for the railroad company to the submission of the issues above described to the jury. The Court of Civil Appeals, in its opinion, held as follows:

"In considering the controverted issues of fact, we must accept as true that testimony which tends to support the verdict of the jury and the judgment of the court. But the following facts were conclusively established upon the trial: That both Peace and the brakeman, Harvey, disregarded rule 93 in the operation of engine No. 95. It is true the testimony offered by the appellee tended to prove that Peace, being on the outside of the curve, could see only a short distance in front of his engine; and it is argued that for that reason he should be excused for not sooner discovering the approach of the other train. But, being in that situation, it became his duty, under the rule, to operate his engine at a rate of speed which would enable him to stop, if necessary, within the distance covered by his vision. That, we think, is the clear meaning of rule 93. There was on that occasion no reason why he should disregard that requirement. Peace was bound to know, at the time, that neither Harvey (the brakeman) nor the fireman was keeping a lookout ahead. As an experienced engineer, he should have known that he could not stop his train within the distance of his vision when going at the rate of

speed at which he was then traveling, if a stop became necessary.

"The negligence of the brakeman, Harvey, in failing to keep a lookout, could not justify Peace in failing to perform his own personal duty in controlling the speed of his engine. Peace evidently knew that Harvey was not in a position to see any distance in front of the engine."

We agree with the holding of the Court of Civil Appeals that Peace, the engineer, knew that the fireman and brakeman were not keeping a lookout, and that he, as a matter of law, assumed their negligence in that respect; and we are further of the opinion that it was error on the part of the trial court to submit the issues of negligence on the part of the fireman and brakeman, or either of them, under this record to the jury.

In the case of Chesapeake & Ohio Ry. Co. v. De Atley, supra, the Supreme Court of the United States says: "It is insisted that, even conceding the train was operated at a negligent rate of speed in view of plaintiff's purpose to board it, yet he assumed the risk of injury involved in the attempt. The act of Congress, by making the carrier liable for an employee's injury 'resulting in whole or in part from the negligence of any of the officers, agents, or employees' of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a coemployee upon the same basis as the negligence of the employer. At the same time, in saving the defense of assumption of risk in cases other than those where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee (Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 502, 34 S. Ct. 635, 58 L. Ed. 1062, 1069, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834), the act placed a coemployee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk."

In the case of Toledo, St. L. & W. R. R. Co. v. Allen, supra, the Supreme Court of the United States, in that opinion, says: "The act of Congress under which plaintiff seeks recovery took possession of the field of liability of carriers by railway for injuries sustained by their employees while engaged in interstate commerce, and superseded state laws upon that subject. Second Employers' Liability Cases, 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. This case is governed by that act and the principles of the common law as applied in the courts of the United States. The plaintiff cannot recover in the absence of negligence on the part of defendant. Seaboard Air Line v. Horton, 233 U. S. 492, 502, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. And,

except as specified in section 4 of the act * * * the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees. Boldt v. Pennsylvania R. R. Co., 245 U. S. 441, 445, 38 S. Ct. 139, 62 L. Ed. 385; Ches. & Ohio Ry. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914."

In the case of Lancaster v. Fitch, 112 Tex. 293, 246 S. W. 1015, 1016, supra, the Supreme Court says: "The jury may have found for defendant in error on each of the two issues properly submitted. On the other hand, as authorized by the pleading and the charge of the court, they may have found for defendant in error only on the issue that was improperly submitted. In order for courts to be able to administer the law in such cases with reasonable certainty and to lay down and maintain just and practical rules for determining the rights of parties, it is necessary that the issues made and submitted to juries, and upon which they are required to pass, be authorized and supported by the law governing the case."

See T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36.

The record shows from the foregoing issues submitted by the trial court to the jury that the jury found that the train crew operating engine No. 1278 were violating rule No. 93, and that this violation of the rule was a proximate cause of the collision. The jury also found that Peace violated rule No. 93, and that such violation contributed to causing the collision. The jury further found that the brakeman who was riding in the cab with Peace was guilty of negligence, and that such negligence on the part of the brakeman was a proximate cause of the collision. The rules of the railroad company provide that the conductor and the engineer are responsible for the safety of the train and the observance of the rules, and that whenever brakemen are permitted to ride on the engine they must promptly obey the orders of the engineer, and in view of the testimony introduced and the foregoing authorities cited, we are of the opinion that the trial court should not have submitted to the jury the issues of negligence on the part of the fireman and brakeman, or either of them.

As this case will be reversed and remanded, we pretermit any consideration of the other matters complained of, because they are not likely to arise during another trial.

For the reasons above stated, we recommend that the judgment of the Court of Civil Appeals and the trial court be reversed, and this cause be remanded to the trial court for another trial.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are

both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.