# CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* DE ATLEY.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 274. Argued March 10, 1916.—Decided May 22, 1916.

The Employers' Liability Act abrogated the common-law fellow servant rule by placing negligence of a co-employee upon the same basis as negligence of the employer.

In saving the defence of assumption of risk in cases other than those where the carrier's violation of a statute enacted for the safety of employees contributed to the injury or death, the Employers' Liability Act places a co-employee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk.

A railroad employee having voluntarily entered an employment requiring him on proper occasions to board a moving train assumes the risk normally incident thereto other than such risk as may arise from the failure of the engineer to use due care to operate the train at a moderate rate of speed so as to enable his co-employee to board it without undue peril.

Such an employee may presume the engineer will exercise due care for his safety and does not assume the risk attributable to operation at unduly high speed until made aware of danger unless the undue

speed and consequent danger are so obvious that an ordinarily careful person in his situation would observe the speed and appreciate the danger.

An employee is not bound to exercise care to discover extraordinary dangers arising from the negligence of the employer or of those for whose conduct the employer is responsible, but may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger are so obvious that an ordinarily careful person under the circumstances would observe and appreciate them.

Where an action under the Employers' Liability Act is tried in a state court local rules of practice and procedure are applicable, and if the state appellate court holds that the trial court failed to follow such a rule relating to an instruction, but affirmed on the ground that there was no question for the jury respecting the question on which the instruction was asked, and in fact there was such a question, it is incumbent on this court to review such decision.

159 Kentucky, 687, reversed.

THE facts, which involve the validity of a judgment in an action in the state court for personal injuries under the Employers' Liability Act, are stated in the opinion.

*Mr. E. L. Worthington, Mr. W. D. Cochran* and *Mr. Le-Wright Browning* for plaintiff in error, submitted.

*Mr. Allan D. Cole,* with whom *Mr. H. W. Cole* was on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

In this action, which was brought in a state court under the Federal Employers' Liability Act of April 22, 1908 (c. 149, 35 Stat. 65), the following facts appeared or might reasonably be inferred from the evidence most favorable to defendant in error (plaintiff below), in the light of which the initial question touching the validity of the judgment in his favor must be determined:

On January 22, 1911, plaintiff was in the employ of defendant and acting as head brakeman on train No. 95— a fast west-bound interstate freight train. When the

train reached a station called Springdale, about six miles east of Maysville, in Kentucky, the train engineer directed plaintiff to go to a nearby railway telephone, call up the operator, and ascertain the whereabouts of train No. 1, which was a fast west-bound passenger train; the object being to determine whether it was safe for No. 95 to proceed to Maysville ahead of it. Plaintiff was unable to understand the operator and so reported to the engineer. He then got into the cab of the locomotive and the train proceeded to the coal docks, about one mile east of Maysville and about 460 yards east of a telegraph station in a signal tower known as the F. G. Cabin, where it stopped for coal and water. Plaintiff was directed by the engineer to go forward to F. G. Cabin and ascertain from the operator the whereabouts of train No. 1. Plaintiff went to the tower, and was there advised that his train had time to reach Maysville. He immediately descended to the platform in front of the tower and beside the track, and saw that his train was approaching. He waited for it, and when it reached the platform he attempted to board the engine. He could not accurately judge the speed of the train, but it appeared to him to be going slowly enough for him to get aboard it. He caught hold of the grab iron and put one foot on the step, and then the speed of the train combined with his weight caused his foot to slip and loosened his hold, so that he fell beneath the wheels of the tender and his arm was cut off. He had been employed as brakeman for about six weeks, and before that had made two round-trips over the road for the purpose of becoming acquainted with his duties. During the time of his employment he had frequently been called upon, under orders of the train engineer, to leave the train and go forward to signal towers for orders or information and then mount the train as it came moving by. On the occasion of the accident the train was running about twelve miles per hour.

The case went to the jury under instructions making defendant's liability dependent upon whether the engineer, with knowledge of plaintiff's presence at the telegraph tower upon business connected with the operation of the train, and with knowledge of his purpose to board the train, negligently operated the train at such a rate of speed as to make plaintiff's attempt to board it unusually hazardous. There was a verdict for plaintiff and the resulting judgment was affirmed by the Court of Appeals of Kentucky. 159 Kentucky, 687.

Upon the present writ of error, it is not disputed that there was sufficient evidence of the negligence of the engineer to require the submission of the case to the jury. It is argued that there was no substantial evidence to support the conclusion that such negligence was the proximate cause of the injury; but this is so clearly untenable as to require no discussion. The remaining questions turn upon the application of the law respecting assumption of risk.

It is insisted that even conceding the train was operated at a negligent rate of speed in view of plaintiff's purpose to board it, yet he assumed the risk of injury involved in the attempt. The act of Congress, by making the carrier liable for an employee's injury "resulting in whole or in part from the negligence of any of the officers, agents or employees" of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a co-employee upon the same basis as the negligence of the employer. At the same time, in saving the defense of assumption of risk in cases other than those where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee (*Seaboard Air Line* v. *Horton*, 233 U. S. 492, 502), the Act placed a co-employee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand

to the question whether a plaintiff is to be deemed to have assumed the risk.

On the facts of the case before us, therefore, plaintiff having voluntarily entered into an employment that required him on proper occasion to board a moving train, he assumed the risk of injury normally incident to that operation, other than such as might arise from the failure of the locomotive engineer to operate the train with due care to maintain a moderate rate of speed in order to enable plaintiff to board it without undue peril to himself. But plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other. *Gila Valley Ry. Co.* v. *Hall,* 232 U. S. 94, 101; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, 504.

It is argued that so far as the question of assumed risks is concerned, it makes no difference, in the case of a brakeman about to board a moving train, whether it is operated at a low or at a high rate of speed; that if the train is moving slowly the risk is an ordinary one incident to the business of railroading; while if it is moving rapidly the risk is open, obvious and apparent. Were we to consider only extreme cases, such as were instanced in argument, the point might be conceded; that is, that mounting a train operated at one mile per hour is an ordinary risk, while mounting a train operated at fifty miles per hour presents a risk which, although extraordinary, is open, obvious and apparent. But these extremes do not present an apt illustration. A speed very much below fifty miles would endanger the brakeman's safety, at the same time being much less apparent. If those operating the train

in question knew that plaintiff intended to board it at that point—and the verdict is to that effect—the jury was warranted in finding that plaintiff had a right to expect that the train would be moving at a moderate rate of speed such as would enable an ordinarily careful brakeman to get on with reasonable safety; and this upon the ground that as head-brakeman plaintiff had the right—indeed, that it was his duty—to get upon the engine, since otherwise the train would be left without a head brakeman and the engineer without the information required for the safe operation of the train; and that plaintiff had no notice nor any opportunity to determine with reasonable certainty what the speed of the train was, or that it was too great for his safety, until the engine had practically reached him. It cannot be said, as matter of law, that a speed of twelve miles per hour would necessarily be obvious to him as a dangerous speed, before he made the attempt to board the train.

It is insisted that the true test is, not whether the employee did, in fact, know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. *Gila Valley Ry. Co.* v. *Hall, Seaboard Air Line* v. *Horton, ubi supra.*

We conclude that there was no error in refusing to peremptorily instruct the jury to return a verdict in favor of defendant.

Error is assigned to the refusal of the trial court to instruct the jury as follows: That when plaintiff entered defendant's service as brakeman he assumed all the ordinary risks and hazards of that employment, and if the jury should believe from the evidence that his injuries were the natural and direct result of any of such risks or hazards, they must find for the defendant. The instruction thus requested was defective, and there was no error in refusing to give it in this form, since it embodied no definition of "ordinary risks and hazards," nor any qualification appropriate to the particular facts of the case. The *gravamen* of plaintiff's complaint, as developed at the trial, and the sole theory upon which the case was submitted to the jury, was that the negligence of the engineer in operating the train at an unduly high rate of speed created an unusual and extraordinary hazard. An instruction upon the question of assumption of risk, dealing solely with the ordinary hazards of the employment, and not pointing out that a different rule must be applied with respect to an extraordinary risk attributable to the engineer's negligence, would probably have confused and misled the jury.

But it appears that in Kentucky there is an established rule of practice, that if instructions are offered upon any issue respecting which the jury should be instructed, but they are incorrect in form or substance, it is the duty of the trial court to prepare or direct the preparation of a proper instruction upon the point in the place of the defective ones. *Louisville & Nash. R. R. Co.* v. *Harrod*, 115 Kentucky, 877, 882; *West Kentucky Coal Co.* v. *Davis*, 138 Kentucky, 667, 674; *Louisville, H. & St. L. Ry. Co.* v. *Roberts*, 144 Kentucky, 820, 824.

Although the present action was based upon a Federal

statute, it was triable and tried in a state court, hence local rules of practice and procedure were applicable. *Central Vermont Ry.* v. *White*, 238 U. S. 507, 511; *Minneapolis & St. Louis R. R. Co.* v. *Bombolis,* this day decided, *ante,* p. 211. The Kentucky Court of Appeals assumed for the purposes of the decision that the case was one where the trial court ought to have followed the local practice and prepared or directed the preparation of a proper instruction covering the question of assumption of risk, and it sustained the judgment only upon the ground that there was no question for the jury respecting it. Whether there was, is a question of law, and of course, in this case, a Federal question; and since the Court of Appeals assumed to decide it, it is incumbent upon us to review the decision. *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 257.

We are unable to concur in the view that there was no question for the jury. Whether the risk was an extraordinary risk depended upon whether the speed of the train was greater than plaintiff reasonably might have anticipated; and this rested upon the same considerations that were determinative of the question of the engineer's negligence. If the jury should find, as in fact they did find, that the speed of the train was unduly great, so that the risk of boarding the engine was an extraordinary risk, the question whether plaintiff assumed it then depended upon whether he was aware that the speed was excessive and appreciated the extraordinary danger, or, if not, then upon whether the undue speed and the consequent danger to him were so obvious that an ordinarily prudent person in his situation would have realized and appreciated them. The Court of Appeals reasoned that plaintiff's duties required him to be upon the passing train; that if he failed to board it he would be left behind; that he had a right to assume the engineer would run the train at a speed that would enable him to get on in safety;

that he was facing the train, which was going directly toward him; that, as a matter of common knowledge, one standing in that position cannot form an accurate judgment of its speed until it comes quite near to him; and that his opportunity to observe the speed was limited to the brief space of time that elapsed between the passing of the front end of the engine and the cab, where it was his purpose to get on; and the court determined that, under such circumstances, "it is well-nigh impossible to tell the difference between a rate of from four to six miles an hour, when an ordinarily prudent brakeman might get on with reasonable safety, and a rate of from ten to twelve miles an hour, when it would be dangerous for him to do so," and that "all the circumstances tend to show that knowledge of the speed of the train came to him so suddenly and unexpectedly that he did not have an opportunity to realize and appreciate the danger of getting on." Conceding the force of the reasoning, we are bound to say that, in our opinion, it cannot be said, as matter of law, to be so incontrovertible that reasonable minds might not differ about the conclusion that should be reached. We therefore hold that the question of assumption of risk was one proper for submission to the jury, and, assuming as the court assumed that the local practice required the preparation of a proper instruction covering the topic, in the place of the defective instruction that was offered, there was error in affirming the judgment of the trial court.

*Judgment reversed and the cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE McKENNA and MR. JUSTICE HOLMES dissent.