DANIEL LEARY *vs.* NEW YORK CENTRAL RAILROAD COMPANY.

Suffolk.    March 8, 1920. — April 2, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Negligence,* Employer's liability.

At the trial of an action against a railroad corporation by an employee under the federal employers' liability act for personal injuries received when helping to unload a motor car from a platform, built above two other motor cars also being transported in a freight car ordinarily used for transporting coal, and six inches below the top of the sides of the freight car, there was evidence that the unloading was being done under the direction of a foreman by means of a derrick, separate ropes being attached to the front wheels and to the rear wheels of the motor car; that the plaintiff with a companion was stationed at the front wheels as the motor car was lifted; that the plaintiff knew that the rope attached to the rear wheels was longer than that attached to the front wheels, that consequently the front end would be drawn up before the rear wheels had left the platform, and that the front end would have to be pulled down by him and his companion to balance the motor car if it was to pass over the sides of the freight car, and that, when the rear end was lifted and free from contact with the side of the freight car, the motor car would swing as pulled by the rope of the derrick; that the plaintiff did not know how much longer the rope attached to the rear wheels of the motor car was than that attached to the forward wheels; that it was from a foot and a half to two feet longer; that, upon an order to hoist being given by the foreman and some one calling out that the rear rope was slack, the plaintiff called, "Wait until I have a look," but the foreman replied, "No wait . . . push the machine over. . . . Push it over quick too;" that the motor car accordingly was hoisted, the plaintiff and his companion pushing down on the forward end to balance it, and that when the rear end cleared the side of the freight car, it fell from a foot and a half to two feet with a jerk, throwing and injuring the plaintiff. *Held,* that

(1) It could not be said as a matter of law that the risk of harm from the drop of the rear end of the motor car was obvious and was assumed by the plaintiff as an incident to his employment;

(2) A finding was warranted that the foreman was negligent in insisting upon the car being hoisted before the plaintiff could "have a look" at the slack rear rope.

TORT for personal injuries received by the plaintiff while in the employ of the defendant, the declaration as amended containing four counts, of which only the fourth, based on the federal employers' liability act, (U. S. Sts. at Large, c. 149, as amended by U. S. St. 1910, c. 143,) was submitted to the jury. Writ dated December 14, 1917.

In the Superior Court the action was tried before *Keating*, J. The material evidence and rulings of the judge to which the defendant excepted are described in the opinion. There was a verdict for the plaintiff in the sum of $5,250; and the defendant alleged exceptions.

*L. A. Mayberry,* (*W. F. Levis* with him,) for the defendant.

*J. J. O'Hare,* for the plaintiff.

PIERCE, J. This is an action of tort based upon the federal employers' liability act, in which the plaintiff seeks to recover damages for injuries received while in the employ of the defendant as a laborer.

It was agreed by both parties that the defendant was and is a railroad corporation engaged in interstate commerce within the meaning of the federal employers' liability act, at the time of the accident and that the plaintiff was in fact employed in interstate commerce at the time of the injury within the meaning of that act. At the close of all the evidence the defendant, among other motions, moved that a verdict be ordered for the defendant and requested the judge to rule and instruct the jury that the evidence was not sufficient to entitle the plaintiff to a verdict, and that upon all the evidence the plaintiff assumed the risk of injury in the manner in which his injury was sustained. The motion was denied and the rulings and requests for instructions were refused. The defendant excepted and the case is before this court on the exception after a verdict for the plaintiff. The evidence warranted the finding of the following facts:

On February 8, 1912, a gondola car, which is a freight car commonly used for transporting coal with high sides but no top arrived at the Huntington Avenue yard of the defendant in Boston. It was loaded with three automobiles, two on the floor and a third on a platform above the other two. A witness for the plaintiff testified, "There were two automobiles loaded in the freight car right on the floor of the freight car, and the third one was raised on a platform above the other two, so as to get the third car, the third automobile, into the car. You see they were too long to go into the car all on the floor, so that is to raise one of them up above the other two to get them in. They put a timber up on the side of the car and then put joists across the car on those timbers and make a platform so as to set the third automobile on

that platform." The plaintiff testified that "it, [the platform] was a square — like a square frame built just the width of the automobile, that the aft — I call it the aft wheels, both side wheels' resting on a single plank. There was a brace running across the both ends of it; I do not know whether there was two braces or not; but there was one, probably about three by four or four by four, I could not tell, but they were braced at the end." The bottom of the wheels as they rested on the planks were six inches below the top of the side of the car.

The freight car was unloaded about 7 A.M. on February 10, 1917, in the following manner: The car was placed opposite a stationary derrick. "Ropes were tied at the forward — two ropes on each of the forward, one rope on both forward wheels and brought up to a hook in the middle and they were tied up to the derrick chain, the hook that is hitched on to the derrick; there was also a rope tied on the hind wheels and brought up to a hook in the derrick in the same way." There was evidence that the ropes attached to the hind wheels were a foot and a half, perhaps two feet longer than those fastened to the front wheels. The plaintiff was not present when the ropes were tied. He and one Davey were one hundred yards away coming back from the hay shed after leaving some lumber there. Their foreman, Moore, at the car said to them, "You men come over here and give a hand and get this car off." Moore sent Davey to the derrick and the plaintiff into the freight car. Davey took his position at the derrick and the plaintiff on the platform at the front right hand corner of the automobile.

The plaintiff testified in substance that he had never had any experience with tying automobiles; that he never had unloaded an automobile from a coal car before; that he had never had any mechanical experience; that he had used the stationary derrick for unloading lumber and one thing and another, and that the ropes were all fixed when he was called into the car.

A start was made to hoist the automobile. "Somebody sung out that the rope was slack on the hind part of the machine." Moore told Davey "to hoist away." Davey replied, "Is it all right?" Moore answered, "Yes." The plaintiff said: "Wait until I have a look." Moore answered, "No wait, . . . push the machine over. I am foreman of this job. Do as I tell you.

Push it over quick too." Davey testified, "Tom Moore told me for to hoist the car — the automobile. I gave the crank a twist twice around and somebody hollered that the car was n't going up and I stopped and asked was it all right. 'Yes,' Moore says, 'wind it up,' so I wound it up as far as the car could go — as far as the derrick could take the car." The plaintiff testified "When the machine was hoisted as far as the derrick could hoist it — it was hoisted up as far as the derrick could hoist it . . . the forward part was high and the hind part was low down and the boom of the derrick was swinging to my left and I was at the right hand side and it carried me as they were swinging the derrick, and two men pulling the rope, what they call a guide rope and I was shoving here and Ed. Sherry was shoving there, the next one, and when the machine went over, the rear part went over first next to the car; the wheels got caught at the edge of the car; it was not high enough to clear the edge of the car and Mr. Moore says, 'bear down in front' to Sherry and I, and we did. And we beared down the front, the hind part was coming up even with the front and it went over some way, I do not know which way it went over, but it gave a lurch and it threw me on my side and laid me flat in the car." "When the automobile slewed the automobile hit me and threw me."

Sherry, a witness for the plaintiff, described the incident as follows: "That there was 'perhaps twenty inches space on the planking on each side of the automobile; that the staging upon which the automobile rested was twelve inches lower than the top of the coal car; that he recalled the time when Leary was called by Moore to work on the automobile; that two men went on the crane (derrick), and me and Dan Leary helped to push out the car;' that he and Leary were on the front end of the car; that Leary was on the front right-hand corner of the car and the witness on the front left-hand corner of the car; that witness placed his body up toward the radiator; that he used his shoulder after the automobile came up; that Moore gave them orders to push out the car; that on lifting up the car the hind wheels got caught 'that we were trying to bear down on this end of the car in order to help out to clear the hind wheels, see;' that the hind wheels 'got caught on the way out, going over the coal car;' that they did n't clear the coal car; that the derrick was hoisted as far as possible; that the auto-

mobile was slanted that position [illustrating], and we were trying to bear down as much as we could; that at this time the front part of the automobile was 'twenty inches or so' in the air above the side of the car, while the rear wheels of the automobile were caught in the side of the coal car and the rear end of the automobile was facing cornerwards in the coal car; that 'we bore down as much as we could, see, and they pulled on the guide rope, and in the meantime the automobile cleared the coal car, and the jerk of this automobile brought Mr. Leary along;' that, when the rope on the car went over the coal car the jerk of this when it cleared over — of course this rope stretched and in the meantime he (Leary) fell.' Asked what caused Leary to fall, the witness replied, 'the jerk of the car; the rope;' asked if he knew what caused the car (automobile) to jerk, the witness stated that 'of course it (automobile) did n't come up even, see, and when the weight of this part went over it came even then, kind of, and of course when it cleared over it took him along.'"

It was in evidence that it was possible to have lifted the automobile up evenly; that it was the slack of the rope that caused the car to lurch after it went over the side and that, tied evenly, it could be pulled out without any pushing. The plaintiff further testified in substance that he had lifted lumber from a car by the use of a derrick but never an automobile; that the lumber went up even or uneven according to the way the man was loading it on the car, "he would put it as near the middle of the log of lumber as he could or whatever it may be, and there might be a little sag in it that I would have to bear down to get it over the car."

Upon the warrantable findings of fact the plaintiff maintains that the case was properly submitted to the jury upon the ground that it was legally permissible for them to find that the method of work ordered and directed by the foreman was a negligent method on his part to do or adopt without learning whether it might result in injury to the plaintiff, particularly when his attention was called to the specific source of danger, and an opportunity for inspection was not given to the employee. We are of opinion the evidence did warrant the submission of the issue of negligence to the jury.

The defendant owed no duty to instruct or warn the plaintiff of dangers which were known to him or which were obviously and visibly incidental to the projected plan of work. The plaintiff

knew from his experience that it was not uncommon to so attach the tackle to heavy bodies to be lifted that they went up unevenly. With the use of a derrick he had lifted from freight cars, lumber and other heavy articles which did not go up evenly, sagged, and required of him that he should bear down on the higher end to get the lower end over the side of the car. In the case at bar he knew from the call of the man at the derrick that the rope that ran from the rear of the automobile to the hook of the derrick was slack and he consequently knew that the front of the automobile would be drawn up before the rear end left the platform. He knew that the front end of the car was drawn up as far as the derrick could lift it, which was about twenty inches above the side of the car. He knew that the front end must be pulled down to balance the automobile if it was to pass over the side of the car. He knew when the rear end was lifted and free from contact with the side of the freight car, it would swing as pulled by the rope of the derrick. What the jury could find he did not know of the facts material or essential to his safety, but which he could have known had he been permitted a moment to "have a look" as he requested at the slack rope on the hind part of the machine, was that that rope was a slack rope a foot and a half or two feet longer than the taut rope attached to the front end and that consequently the rear end of the automobile would drop with a jerk the considerable distance of two feet the moment the automobile swung free of contact with the side of the car and was unsupported by the downward pressure of the men at its other end. In these circumstances we think the risk of harm from the drop of the end of the automobile was not an obvious risk assumed by the plaintiff as an incident to his employment.    *Seaboard Air Line Railway* v. *Horton*, 233 U. S. 492, 504.    *Chesapeake & Ohio Railway* v. *De Atley*, 241 U. S. 310, 314.    *Chicago, Rock Island & Pacific Railway* v. *Cole*, 251 U. S. 54.    *Whalen* v. *Hugh Nawn Contracting Co.* 217 Mass. 400, 402.

We are also of opinion that the foreman should have known and could be found by the jury to have known that a special danger unknown to the plaintiff attended the method adopted by him of adjusting the ropes to the automobile and that it was negligent for him to order the plaintiff "no wait" until the plaintiff could "have a look" at the slack rope, but to "push the machine over" "push it over quick." *Tinkham* v. *Everson*, 219 Mass. 164, 167.

*Whalen* v. *Hugh Nawn Contracting Co.* 217 Mass. 400.   *Hogan* v. *Pennock,* 216 Mass. 274.

It follows that the case was properly submitted to the jury.

*Exceptions overruled.*