Anya Carpenter, Administratrix of the Estate of John J. Carpenter, Deceased, Appellee, v. Grand Trunk Western Railway Company, Appellant.

Gen. No. 35,066.

Opinion filed November 24, 1931.

McCordic, Dent & Freeman, for appellant.

Joseph D. Ryan, for appellee; Frank Johnston, Jr., of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

On October 30, 1929, plaintiff, as administratrix, commenced in the circuit court an action for damages against defendant, based upon the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, for the negligent killing of John J. Carpenter on the afternoon of August 31, 1929, in defendant's 12th street yards in Chicago, where he then was employed and acting as a switchman. A trial was had before a jury in December, 1930, resulting in a verdict finding defendant guilty and assessing plaintiff's damages at $20,000. Judgment on the finding was entered against defendant and the present appeal followed.

The declaration consisted of three counts, but the third was withdrawn on the trial at the close of plaintiff's evidence. In both the first and second counts it is alleged that on and prior to the day of the accident defendant was a common carrier by railroad, engaged in interstate commerce in the City of Chicago and State of Illinois and other States; that deceased was employed by defendant in interstate commerce as a switchman, and was in the due course of his employment in a certain yard used by defendant in said city and State; that he then was engaged with other of defendant's servants in switching and assembling certain freight cars along and upon divers tracks and crossovers, which cars were then and there being used and moved in interstate transportation; and that it was defendant's duty to furnish the deceased with a reasonably safe place in which to perform his work and to exercise reasonable care in the management of all cars and engines, while being operated upon and over the premises, so as not to injure him and not to expose him to unusual and extraordinary hazards. In the first count it is also alleged that, while deceased was engaged in the due course of his employment with defendant's other servants, and while he was then "standing or walking between certain of said tracks,"

and while "he was in an *obviously dangerous position* in the event that any locomotive engine or car should be propelled toward him from the rear," the defendant, not regarding its said duty, so negligently "operated, controlled and *backed*" a locomotive engine toward and up to the place where deceased was working that, as the proximate result, the engine struck and ran over him, whereby he received severe bodily injuries causing his death, etc.

In the second count it is alleged that on the day of the accident deceased was engaged, as a member of a switching crew which included an engineer and fireman of a locomotive engine, in switching and assembling cars along and upon certain tracks "extending in a general northerly and southerly direction at said place," and upon and over "certain crossovers extending respectively from the centermost track to certain adjacent tracks in a *northeasterly and northwesterly* direction"; that the tracks and crossovers were also then being used by the members of *another* switching crew of defendant, who were then moving cars by means of *another* locomotive engine; that in the course of his employment deceased was required to be upon and near the crossovers and "to operate and turn a certain *ground switch* by means of a switch-handle thereto attached, in order that a locomotive engine or cars could be moved along and upon said centermost track"; that the switch-handle was in such close proximity to one of the adjacent parallel tracks that an employee engaged in operating the same would, of necessity, be compelled to stand close to or upon said adjacent parallel track, and that, while so engaged, engines or cars could not safely be moved upon or along said adjacent parallel track and past the place where such employee was at work; and that all of these facts defendant knew or should have known in the exercise of reasonable care for the safety of deceased.

And it is charged that on said day, while deceased was engaged in operating said switch, defendant, "through its other servants in charge of said *other* locomotive engine," so carelessly and negligently "drove, operated and *backed* said locomotive engine in a *southerly* direction along and upon said adjacent parallel track, and up to, toward and past the place where deceased was so engaged," that, as the proximate result thereof, said engine struck, ran against and over said deceased, causing his death, etc.

In both counts it is alleged that deceased left him surviving Anya Carpenter, his widow (administratrix herein), and a minor daughter, as his only next of kin, each of whom was dependent upon deceased for support, etc. To both counts defendant filed a plea of the general issue and a special plea not necessary now to be considered.

On the trial the evidence disclosed the following: South of 12th street there are three tracks, running north and south, called respectively the "house," the "wash" and the "long" tracks. The wash track is the center track, and the two others ("house" and "long") are respectively to the west and east of it. *North* of 12th street the "long" track is called the "Sullivan" track. About 160 feet south of 12th street is the commencement of a crossover track, leading northwesterly from the wash track to the house track. There is a "jack-knife" switch there, which is operated by throwing a handle *crosswise* between the wash track and the long track. About 30 feet south of this switch, and in the wash track, is the commencement of another crossover track (having a length of about 180 feet) leading northeasterly from the wash track into the long track and to the Sullivan track beyond. This switch is a "ball switch," which is operated lengthwise between the tracks. On the afternoon of August 31, 1929, and prior to the accident,

there were as usual two crews of five men each, working in the yard, called respectively "Fox's" crew and "Van Vlack's" crew. Each crew had a locomotive engine to move and switch cars. Fox was the "conductor" of his crew, which included himself, the engineer and fireman of one locomotive, a head switchman (Carpenter, the deceased), and another switchman (Faunier). Van Vlack was the "conductor" of his crew, which included himself, the engineer (Spars) and fireman (Patterson) of the other locomotive, No. 7524, a head switchman (McCotter) and another switchman (Hart). Fox and Van Vlack, as well as all others of the latter's crew, were called as witnesses, some by plaintiff and some by defendant. Van Vlack's crew began work about 3 o'clock p. m. and thereafter and until about 4:30 o'clock p. m., were engaged in switching divers freight cars, when Fox's crew came up the wash track from the south into the yards, with their engine, headed north and pulling two or three cars and a caboose. Cars had been and were then being switched by Van Vlack's crew for the purpose of assembling them in the yards, as usual, into two trains which were afterwards to be moved south to Elsdon, near 51st street. Each train was to be made up of an engine, cars and a caboose. Fox's crew, of which deceased was head switchman, was, however, to move its train, after it had been assembled, out of the yards and to Elsdon, ahead of Van Vlack's train. The situations and movements of cars and the actions of the crews, just prior to the accident, were: A section of the Fox train was standing north of 12th street on the wash, or center, track. It was necessary for certain switching of other cars to be made, requiring the throwing of the switches of the crossover tracks. Van Vlack's crew coupled their engine, which was headed north, onto the *two* cabooses, standing on the wash track south of said switches and *pushed* them over the *north-*

*easterly* crossover track and on to the Sullivan track, north of 12th street, out of the way of other switching of cars then about to be done by Fox's crew. Hart, plaintiff's witness and a switchman on Van Vlack's crew, testified that just before this movement was made he had a conversation with Carpenter and gave him directions as to "lining the switches," told him of the proposed movement of Van Vlack's engine and the two cabooses, and further told him that "after *we* get through he could line up the switches," and that "we were going in on the *long* track *to stay there.*" Following this conversation and movement, Van Vlack's engine was uncoupled from the cabooses, then on the Sullivan track, and it started *backing* south and into and on the long track. None of the crew was on the footboard of the tender (then front) of the moving engine, keeping a lookout. McCotter and Hart were riding on the footboard at the head (then rear) of the engine. While this backing movement was in progress, Carpenter went to the "jack-knife" switch, lying crosswise between the wash and long tracks and *close* to the long track, for the purpose of throwing the handle thereof. To do this it was necessary for him to stand very near or over the west rail of the long track, and while in the act of throwing the switch he was struck and run over by the engine and killed. No witness actually saw the engine strike and run over him. Patterson, the fireman and who was on the *west* side of the engine, testified that he did not see the happening of the accident, but saw Carpenter's body immediately thereafter. Carpenter was lying on his back with head to the west about four feet south of the switch. The hook was out of the switch and the handle in a position to throw, but it was not thrown. Hart testified that after Carpenter's death "his feet were inside the west rail of the long track towards the wash track and his body was cut in two." The

engine came to a stop on the long track about 20 feet south of the jack-knife switch. The evidence was conflicting on the question of the necessity of backing said engine at all, or as far south on the long track as the switch in order not to interfere with the intended future switching movements of cars to be made by Fox's crew. Carpenter was 32 years old at the time of his death, had been regularly employed as a switchman, had received for his work from $140 to $200 per month, and left him surviving his widow and a daughter, four years old, who were dependent upon him for support.

Three points, and only three, are made and argued by defendant's counsel as grounds for a reversal of the judgment. One is that there is no showing of negligence on the part of defendant, or any of its employees, which proximately caused the death of deceased. We cannot agree with the contention. In our opinion there was evidence showing that the members of Van Vlack's crew were guilty of negligence in backing the engine, at the time and as far as they did, without having a proper lookout thereon to warn employees, including deceased, in the yards of its approach. There was also evidence tending to show that this backing movement, at the particular time and after the cabooses had been pushed onto the Sullivan track, was unnecessary and unusual. And we think that the questions whether said crew or the members thereof were guilty of negligence, and whether their negligence was the proximate cause of the deceased's death, were questions which were peculiarly within the province of a jury to determine, under all the facts and circumstances in evidence.

Counsel also contend that the evidence discloses that the death of the deceased was caused *solely* by his own negligence in not looking and seeing the approaching engine. And counsel argue, in substance, that, when Hart told him that he might "line up the switches"

and that "we were going in on the *long* track *to stay there*," deceased was warned in advance that the engine, after pushing the cabooses onto the Sullivan track, would immediately back onto the long track and go as far south as to pass the switches. We do not think that there is any substantial merit in the contention or argument. In our opinion it was for the jury to say, under all the facts and circumstances in evidence, whether or not the deceased at and immediately before the time of his death was in the exercise of ordinary care for his own safety. By their verdict, after being properly instructed by the court, they determined that he was not guilty of contributory negligence at said time, and we are not disposed to disturb the verdict upon the ground urged.

Counsel further contend that "under the undisputed evidence, viewed in the light most favorable to plaintiff, the death of decedent is shown to have been the result of a risk which he must be held to have assumed *as a matter of law.*" And counsel argue in their brief that, "if the approaching engine constituted a risk, it was a risk which Carpenter himself created by choosing the moment when the engine was nearest to the switch as the time for throwing it, and by failing to heed Hart's warning to wait until 'after we get through,' and by failing to use his senses of sight and hearing or by placing himself in a position where he could not use them." We do not think there is any merit in the contention or argument. There was no evidence that Carpenter had knowledge that the engine, after having put the cabooses on the Sullivan track, would then immediately back so far south on the *long* track *as to pass the switches* and the place where he properly was at work. And there was evidence tending to show that the backing of the engine for so great a distance at the particular time was an unusual and unnecessary movement. In *Davis v. Crane,* 12 Fed.

(2d) 355, 356, it is said: "An employe assumes the *ordinary* risks incident to the business in which he engages, but does not assume extraordinary risks arising from the employer's negligence unless and until he is aware of the same and appreciates the danger therefrom, or unless, under the circumstances, they are so plainly observable that he is presumed to know them and to appreciate the danger." And in *Chesapeake & Ohio Ry. Co. v. De Atley*, 241 U. S. 310, 315, it is said: "According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." (See, also, *Chicago, R. I. & P. Ry. Co. v. Ward*, 252 U. S. 18, 22.)

No complaint is made of the amount of the verdict and judgment or that the court erred in giving any instruction offered by plaintiff or in refusing to give any instruction offered by defendant.

In our opinion the judgment appealed from should be affirmed and such will be the order.

*Affirmed.*

KERNER and SCANLAN, JJ., concur.