Earl WANTLAND, Plaintiff-Appellee,

v.

**ILLINOIS CENTRAL RAILROAD COM-
PANY, Defendant-Appellant.**

**No. 11787.**

United States Court of Appeals
Seventh Circuit.

Nov. 6, 1956.

Rehearing Denied Dec. 3, 1956.

Lawrence Lawless, Herbert J. Deany, Robert S. Kirby, Chicago, Ill., J. H.

Wright, Chicago, Ill., of counsel, for appellant.

Robert J. Rafferty, Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages resulting from injuries sustained by Earl Wantland, an employee of the defendant, Illinois Central Railroad Company.

The jury returned a verdict of $11,-000.00 in plaintiff's favor and judgment was entered thereon. The defendant claims as error certain procedural irregularities and the failure of the District Court to grant defendant's motion for a directed verdict or its motion for a new trial.

The plaintiff had been employed by the Railroad for a period of 28 years, and since 1923 he had served exclusively as a brakeman. In 1943 he was promoted to conductor and subsequently alternated as brakeman or conductor depending on his seniority status in competition with co-workers.

On September 13, 1950, plaintiff reported for work at 7:30 P.M. and was assigned as flagman to an extra train at Clinton, Illinois. The train, comprised of a steam engine, approximately 55 empty coal cars and a caboose, was going from Clinton to Cimic, Illinois. The first stop was Lake Fork, Illinois, 26 miles south of Clinton. South of Lake Fork the trackage was a single main line track running in a north-south direction. Immediately east of and parallel to the main line there was a passing track with its north end at the Lake Fork depot and extending in a southerly direction about 80 car lengths. Plaintiff's train went onto this passing track to clear the main line for a scheduled northbound passenger train. Plaintiff left the caboose where he had been riding to inspect the train. After the passenger train had passed plaintiff's train began to move, although he had not boarded it. Plaintiff was standing on the roadbed and when the caboose came up to him he attempted to board it by catching hold of the grab iron on the rear end of the caboose for the purpose of pulling himself up and onto the steps at the rear of the caboose. The attempt was unsuccessful and plaintiff fell, injuring his left shoulder.

The plaintiff was the only witness, other than medical witnesses, who was called on behalf of the plaintiff. He testified that after his train stopped on the passing track he left the caboose where he had been riding with the conductor of the train and proceeded to walk down the west side of the train between the main line and the passing track to inspect the train—"to see if there was anything dragging, or if they [the cars] had any hot boxes, just a general inspection." This was one of plaintiff's duties as brakeman and flagman on the night in question. He walked approximately 30 to 35 car lengths towards the engine when he observed a red light displayed on a block signal located at the south end of the passing track which was an indication that the passenger train was approaching. Plaintiff then crossed over to the east side of his train for the purpose of inspecting the other side of the train and to remove himself from a position between the passing track and the main line for safety reasons. After reaching the opposite side of the train he proceeded to walk towards the caboose. The passenger train passed and plaintiff's train started to move. At this point plaintiff was about 25 car lengths from the caboose. His train kept picking up speed and when plaintiff attempted to board, the train was travelling approximately 15 to 20 miles per hour. It is standard operating practice that trainmen board moving trains, although plaintiff testified that the usual and customary speed which is maintained when it is known that a man is going to board is 5 to 10 miles per hour. In describing his endeavor to board, plaintiff said: "I was walking along the east side of the

train and it looked like it was a reasonably decent place to get on, so when the caboose approached me, I made two or three steps with the train in the direction the train was going to get on, and I caught hold of the grab iron on the corner of the caboose with my left hand, and I had the lantern hanging over my right arm, and as I caught the grab iron, as I made these steps, and my right foot went for the caboose step, and the left foot gave under the soft footing and loose cinders." Plaintiff succeeded in getting both of his feet on the lowest caboose step but was off balance, lost his hold on the grab iron and fell to the ground.

Plaintiff testified that the roadbed on the east side of the passing track where he tried to board the train was low and sloping, and that the cinders on the shoulder were soft and loose.

It is the plaintiff's position that the Railroad, through its agents, was negligent in failing to provide him a safe place to work and in causing the train to travel at a speed which was in excess of the customary and usual boarding speed.

■■ In actions under this Act, the issue of the carrier's negligence is for the jury to determine and it is the jury's function to weigh the contradictory evidence and inferences, judge the credibility of witnesses and draw the ultimate conclusions as to the facts. Wilkerson v. McCarthy, 336 U.S. 53, 69 S. Ct. 413, 93 L.Ed. 497, rehearing denied 336 U.S. 940, 69 S.Ct. 744, 93 L.Ed. 1098. If the jury can find every fact exists which must exist to sustain the plaintiff's case and if the evidence on the issue of negligence is such that reasonable minds might differ on the question of whether the carrier has been negligent, the case is one for the jury. Frizzell v. Wabash R. Co., 8 Cir., 199 F. 2d 153, certiorari denied 344 U.S. 934, 73 S.Ct. 505, 97 L.Ed. 718.

The defendant insists that there was not sufficient evidence to justify submission of this case to the jury.

■ Plaintiff testified, as noted above, that the roadbed where he attempted to board was low and sloping and that his "left foot gave under the soft footing and loose cinders" on the shoulder at this spot. The Railroad introduced testimony to the effect that the condition of the grade on the east side of the passing track was normal and usual; that it was not defective in any respect; that the slope of the subgrade was just enough to cause rain and moisture to drain away from the track; and that the place where a brakeman would stand in the performance of his duties was level. A factual issue was thus raised and it was for the jury to determine whether the Railroad negligently failed to provide plaintiff with a safe place to work, and whether, in case of negligent failure, it was a proximate cause which contributed in whole or in part to the accident. Fleming v. Kellett, 10 Cir., 167 F.2d 265; Knight v. Chicago & N. W. Ry. Co., 3 Ill.App.2d 502, 123 N.E.2d 128, appeal denied 5 Ill.App.2d vi.

■ The Railroad urges that plaintiff's conduct in trying to board the train when it was travelling between 15 and 20 miles per hour, in light of plaintiff's testimony that 5 to 10 miles per hour was the usual and customary boarding speed, was the sole, proximate cause of the accident and resulting injuries. It is not negligence per se to board a moving train and this is especially true in view of the fact that it appears to be customary among railroad employees and a normal incident of their employment. See Chesapeake & Ohio Ry. v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 565, 60 L.Ed. 1016; Knight v. Chicago & N. W. Ry. Co., supra. In the De Atley case the Court concluded that the act of boarding a train travelling at 12 miles per hour could not be said, as a matter of law, to be an "open, obvious, and apparent" risk which would necessitate a finding that the plaintiff's conduct was the sole and proximate cause of the accident.

■ Plaintiff's employment required that he be on the train when it left the siding and that he be stationed at the

rear of the train. The only alternatives that were available to the plaintiff were to flag the train (he testified, however, that the engine was out of sight after it had travelled 6 to 8 car lengths) or to wait and catch the next train. On this record we cannot conclude that plaintiff's conduct was unreasonable as a matter of law, or, if negligent, that such negligence was the sole, proximate cause of the accident.

■■ Plaintiff testified that the conductor was in the caboose when he alighted to inspect the train; that as far as he knew the conductor was still in the caboose when the train started to move preparatory to leaving the siding; and that the conductor saw him fall and thereupon stopped the train. The jury could have found that the conductor knew or should have known that plaintiff had not boarded when the train started to move but, regardless of that fact, permitted the train to reach an excessive speed for boarding purposes. Plaintiff further testified that the engine was in sight as he started to walk back to the caboose. Since it was dark at this time and plaintiff was carrying an illuminated lantern, the jury could reasonably conclude that the engine crew or a member thereof knew or should have known that plaintiff was not in the caboose but was on the ground inspecting the train and that a speed of 15 to 20 miles per hour was hazardous to plaintiff who would have to board the train.

■ And finally, assuming arguendo, that plaintiff's conduct admits of negligence, that fact does not bar a recovery, but only goes to diminish his damages in proportion to the amount of such negligence. 45 U.S.C.A. § 53.

■ Only a complete absence of probative facts to support the verdict reached by the jury would justify this court in substituting its conclusions for those of the jury. Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916. We cannot say as a matter of law that the plaintiff was guilty of negligence which was the sole, proximate cause of this accident.

There is, however, error which requires a reversal of the judgment below and a remand for a new trial.

During the course of the trial when counsel for the Railroad was cross-examining plaintiff, the following occurred:

By Mr. Lawless [counsel for the Railroad]:

"Q. In 1952 you made $5,833.29?

"Mr. Rafferty [counsel for plaintiff]: Objection as immaterial, your Honor.

"Mr. Lawless: Your Honor, it is perfectly proper. This man [plaintiff] is claiming a diminution of earnings in his pleadings, and I am trying to show his earnings—

"Mr. Rafferty: *We are only claiming lost earnings during the period he was off work, your Honor.* That is the only claim in our case.

"The Court: If counsel will say that he does not make that claim—

"Mr. Lawless: Are you withdrawing any other claim except for those wages?

"Mr. Rafferty: That is the only thing I ever told the jury we had is the claim of lost time to April 30th, 1951 [the approximate date that plaintiff returned to work].

"The Court: We do not have it before us. It is in the record. *Let the record show that in view of your position, Mr. Rafferty, I sustain your objection to the question.*" (Emphasis added.)

Notwithstanding the import of this colloquy, the trial judge, over objection by counsel for the Railroad, instructed the jury, in part, as follows on the question of damages:

"In determining the amount of such damages, if any, it is your duty to take into consideration his age and the character and extent and severity of such injuries, if any,

pain and suffering, if any he has endured up to the present time, and the pain and suffering if any which it is reasonably certain he will endure in the future, and take into consideration such disability if any that he has suffered up to the present time and such disability if any as it is reasonably certain he will suffer in the future therefrom. *You should take into account and consideration the extent if any in which he has been incapacitated to work and earn money in consequence of such injury* provided you should find from the preponderance of the evidence that he has been incapacitated to work and earn money, *and* the amount of earnings, if any, which the plaintiff has lost from the time he was injured up to April 20, 1951 * * *." (Emphasis added.)

■ It is not necessary to decide whether plaintiff waived only the element of diminution of future earning power or every element of damages except "lost earnings during the period [plaintiff] was off work." In either event the jury was instructed to consider and assess damages for an element or elements which had been waived, perhaps inadvertently, by plaintiff, and the Railroad was thereby precluded from introducing evidence which would tend to reduce the amount of damages that the jury might otherwise assess. Since the plaintiff withdrew any claim of damages for the diminution, if any, in his future earning power, then proof of plaintiff's increased earnings would, of course, be immaterial. But the record shows that plaintiff tendered to the court an instruction covering this element of damages and the court gave such instruction over the objection of the Railroad. This was prejudicial error which necessitates a new trial.

■ The Railroad also claims as error the instruction given by the trial court that: " * * * the Federal Employers' Liability Act does not make the employer an insurer, absolute insurer of the safety of its employees while they are on duty." However, no error may be assigned to the giving or failure to give an instruction unless the objecting party states distinctly the matter to which he objects and the grounds of his objection before the jury retires to consider its verdict. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.; Ditter v. Yellow Cab Co., 7 Cir., 221 F.2d 894. This, the Railroad failed to do. Although we doubt the propriety of the instruction, it is not properly before us for our consideration.

■ The Railroad also insists that the trial court erred in instructing the jury that the Federal Employers' Liability Act provides that an employee shall not be held to have assumed the risk of his employment. This court had occasion to pass on a similar contention in Larsen v. Chicago & N. W. R. Co., 7 Cir., 171 F.2d 841, 846, where it was held that such an instruction was not erroneous. But see Justice Frankfurter's concurring opinion in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, at pages 72, 73, 63 S.Ct. 444, 452, at pages 453, 454, 143 A.L.R. 967.

We have considered other issues raised by the Railroad and have found them to be without merit.

The judgment of the District Court is reversed and the cause remanded for a new trial.

Reversed and remanded.