[Civ. No. 30507. First Dist., Div. One. Jan. 10, 1973.]

CLARENCE CARLSON, Plaintiff, v.
PACIFIC FAR EAST LINES, Defendant and Respondent;
CALIFORNIA STEVEDORE AND BALLAST COMPANY,
Claimant and Appellant.

884

## Counsel

Cooper, White & Cooper, R. Barry Churton and Alan C. Freeland for Claimant and Appellant.

Maloney, Chase, Fisher & Hurst and Peter W. Fisher for Defendant and Respondent.

No appearance for Plaintiff.

## Opinion

**ELKINGTON, J.**—We are concerned here with the application of California's rule of *Witt* v. *Jackson,* 57 Cal.2d 57, 69-73 [17 Cal.Rptr. 369, 366 P.2d 641], to a longshoreman's judgment for injuries sustained on a dock while engaged in loading a transoceanic vessel lying alongside.

*Witt* v. *Jackson* allows a third party tortfeasor to invoke the concurrent negligence of an employer, thus defeating the employer's right to reimbursement for workmen's compensation paid to an injured workman. In such a case the amount of the workman's judgment against the third party tortfeasor will nevertheless be reduced by the amount of workmen's compensation paid him, for otherwise he would have a "double recovery." The rule has the effect of compelling contribution from the negligent employer toward his injured workman's judgment against the third party, in the amount of the workmen's compensation paid.

There is no dispute as to the evidence.

Plaintiff Clarence Carlson was a longshoreman employed by the California Stevedore and Ballast Company. While on a dock, attaching slings to cargo which was to be loaded on a vessel of defendant Pacific Far East Lines, he was struck and injured by a vehicle operated by his employer but owned by defendant Pacific Far East Lines. The employer thereafter paid workmen's compensation benefits of $20,793.12 to Carlson. These benefits were paid pursuant to the workmen's compensation law of California. (Lab. Code, § 3201 et seq.) Carlson commenced an action against Pacific Far East Lines; two causes of action were stated, one based on a negligence theory and the other upon the "federal maritime doctrine of unseaworthiness." In the action Carlson's employer, as permitted by California's Labor Code section 3856, made a timely claim of lien against any judgment which might be obtained by Carlson, for the amount of workmen's compensation

benefits it had paid out. At the time of trial Carlson withdrew the negligence count and the case proceeded on the unseaworthiness theory alone.

A jury returned a verdict for $100,000 in Carlson's favor against the defendant Pacific Far East Lines. They also made a special *Witt* v. *Jackson* finding that the negligence of Carlson's employer, California Stevedore and Ballast Company, proximately contributed to his injuries.

The trial court thereafter, deducting from the jury's verdict the amount of workmen's compensation benefits received by Carlson, entered judgment against Pacific Far East Lines for $79,206.88. The judgment provided, as required by *Witt* v. *Jackson,* that California Stevedore and Ballast Company take nothing by virtue of its claim of lien.

Neither Carlson nor Pacific Far East Lines has appealed from the judgment, which as between those parties is now final and binding. But the employer, California Stevedore and Ballast Company, has appealed from the portion of the judgment which denies enforcement of its claim of lien for $20,793.12 against defendant Pacific Far East Lines. It is this appeal which is presently before us.

It will be seen that Carlson's action as tried, and his judgment, were based solely upon the federal maritime doctrine of unseaworthiness.

■ The doctrine of unseaworthiness, first announced in *The Osceola,* 189 U.S. 158, 175 [47 L.Ed. 760, 764, 23 S.Ct. 483], imposes a species of liability, regardless of fault, against a vessel owner for injuries to workmen caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment. (*Gutierrez* v. *Waterman S.S. Corp.,* 373 U.S. 206 [10 L.Ed. 2d 297, 83 S.Ct. 1185]; *Gebhard* v. *S.S. Hawaiian Legislator,* 425 F.2d 1303.) Although actions founded on the doctrine may be brought in either federal or state courts there can be no doubt that the doctrine is an established principle of federal maritime law, and is peculiar to that body of law. (*Seas Shipping Co.* v. *Sieracki,* 328 U.S. 85, 88 [90 L.Ed. 1099, 1102-1103, 66 S.Ct. 872].) On a cause of action based on the doctrine of unseaworthiness, even in a state court the rights and liabilities of the parties are determined by federal maritime law. (*Kermarec* v. *Compagnie Generale,* 358 U.S. 625, 628 [3 L.Ed.2d 550, 553, 79 S.Ct. 406]; *Pope & Talbot, Inc.* v. *Hawn,* 346 U.S. 406, 409 [98 L.Ed. 143, 151, 74 S.Ct. 202]; *Carlisle Packing Co.* v. *Sandanger,* 259 U.S. 255, 259 [66 L.Ed. 927, 930, 42 S.Ct. 475]; *Intagliata* v. *Shipowners & Mer. etc. Co.,* 26 Cal.2d 365, 371 [159 P.2d 1].)

California Stevedore and Ballast Company contends that since Carlson's action and judgment were based exclusively on the doctrine of unseaworthi-

ness, federal maritime law and not this state's *Witt* v. *Jackson* rule, was applicable to its claim of lien. ■ It correctly points to the rule that a state doctrine, statutory or decisional, which is a bar to effective enforcement of the applicable federal martime law, or otherwise interferes with the proper uniformity of that law, cannot constitutionally be applied. (See *Moragne* v. *States Marine Lines*, 398 U.S. 375, 401-402 [26 L.Ed.2d 339, 357, 90 S.Ct. 1772]; *Pope & Talbot, Inc.* v. *Hawn, supra,* 346 U.S. 406, 409; *Southern Pacific Co.* v. *Jensen,* 244 U.S. 205, 215 [61 L.Ed. 1086, 1098, 37 S.Ct. 524]; *The Lottawanna,* 88 U.S. (21 Wall.) 558, 575 [22 L.Ed. 654, 662].) It is conceded that there is no federal rule comparable to that of *Witt* v. *Jackson.*

The position of a state court exercising its concurrent jurisdiction over a cause of action based on an act of Congress (e.g., Employers' Liability Act, 45 U.S.C.A. §§ 51-60), or a federal common law doctrine (e.g., the doctrine of unseaworthiness) is fluently described in *Intagliata* v. *Shipowners & Mer. etc. Co., supra,* 26 Cal.2d 365, 371-375. There the California Supreme Court, quoting high federal authority approvingly, stated: "It is now settled that 'The general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common law court.' . . . and that the state courts must preserve all substantial admiralty rights of the litigants. . . . A state court having the same jurisdiction over a case that a federal court would have if the suit had been brought there, must determine the rights of the parties under the maritime law as a 'system of law coextensive with, and operating uniformly in, the whole country.' . . . State law is inapplicable to a maritime cause 'if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' . . . Thus the common-law defense of assumption of risk is not available in either a state or federal court in a suit brought by a seaman under the Jones Act . . . , nor is contributory negligence a bar to plaintiff's recovery in such a suit. . . . 'The source of the governing law applied is in the national, not the state, governments. If by its practice the state court were permitted substantially to alter the rights of either litigant, as those rights were established in federal law, the remedy afforded by the state would not enforce, but would actually deny, federal rights which Congress, by providing alternative remedies, intended to make not less but more secure . . . admiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State. So here, in trying this case the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected.' . . . 'The constant objective

of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded by the jurisdiction in which the right itself originates.' "

■ As to such actions in state courts while the substantive rights conferred by federal law are controlled by that law, matters of procedure and practice are governed by the law of the forum, the state. (See *Ches. & Ohio Ry.* v. *De Atley,* 241 U.S. 310, 316-317 [60 L.Ed. 1016, 1020-1021, 36 S.Ct. 564]; *Showalter* v. *Western Pacific R.R. Co.,* 16 Cal.2d 460, 465, 471 [106 P.2d 895].) Even in federal courts, state law will be applied to cross-claims for liens, or indemnity, or contribution, in causes of action created by federal statutes. The rationale seems to be that federal concern ends when the beneficiary of a federal law has received his full due under that law. Thus in *Dickinson* v. *Stiles,* 246 U.S. 631 [62 L.Ed. 908, 38 S.Ct. 415], an attorney's lien, authorized only by state law, was given effect against an injured workman's judgment under the Federal Employer's Liability Act. And where liability for tort "was bottomed on and existed" because of federal statute, any "right to indemnity or contribution [from joint and active tortfeasors was] nevertheless governed by the applicable state law." (*Chicago & North Western Ry. Co.* v. *Chicago, R. I. & P. R. Co.,* 179 F.Supp. 33, 39; see also *Brenham* v. *Southern Pacific Company,* 328 F.Supp. 119, 123, and authority there cited.) Such cross-claims being unrelated to any federally guaranteed right, even their *"substantive features"* have been held controlled by state law. (*Ratigan* v. *New York Central Railroad Co.,* 291 F.2d 548, 553.)

It becomes clear that in cases such as that before us federal demands upon state courts go no further than to require that substantive rights granted litigants under federal law shall not be abridged by the states. Under this principle the superior court was bound faithfully to apply federal maritime law in determining the rights and obligations, of the plaintiff Carlson, and defendant Pacific Far East Lines, on the unseaworthiness issue.

Just as clear, however, is the premise that as to matters which in no way affect the substantive "federal rights" of the parties, state law will be observed in state courts.

Finding such rules to be "thoroughly settled" the court in *Minn. & St. Louis R.R.* v. *Bombolis,* 241 U.S. 211, 218 [60 L.Ed. 961, 963-964, 36 S.Ct. 595], said: "[I]t was of course presumably an appreciation of the principles so thoroughly settled which caused Congress in the enactment of the Employers' Liability Act to clearly contemplate the existence of a concurrent power and duty of both Federal and State courts to administer the

rights conferred by the statute in accordance with the modes of procedure prevailing in such courts."

Here Carlson was given the full measure of his substantive rights under the maritime doctrine of unseaworthiness, and not being aggrieved, he has not appealed from the judgment. Reduction of the judgment by the amount of workmen's compensation paid him would have been proper under federal law (see 5 U.S.C.A. § 8132; 33 U.S.C.A. § 933), and was proper under state law (see Lab. Code, § § 3850-3864); no contrary contention is made.

On the other hand, the claim of Carlson's employer, California Stevedore and Ballast Company, was in no way founded on, or even reasonably related to, any federally guaranteed right of action. Instead, the claim is based on workmen's compensation paid under the mandate of state law. And the very "claim of lien" relied upon, and which is the subject of this appeal, was filed under the authority of California's Labor Code section 3856; the rights which California Stevedore and Ballast Company claimed under it were granted by the law of California.

Quite clearly, the resolution of California Stevedore and Ballast Company's cross-claim did not abridge or interfere in any way with the federal doctrine upon which Carlson's action was based. ■ Accordingly, in the light of the authority we have discussed, we hold that the law of California was applicable to the proceedings on that claim. It necessarily follows that the superior court properly applied California's rule of *Witt* v. *Jackson, supra,* 57 Cal.2d 57, and that its ruling must be affirmed.

We have found nothing in *Pope & Talbot, Inc.* v. *Hawn, supra,* 346 U.S. 406, or *Halcyon Lines* v. *Haenn Ship Corp.,* 342 U.S. 282 [96 L.Ed. 318, 72 S.Ct. 277], of aid to California Stevedore and Ballast Company's contention. In those *federal* "unseaworthiness" cases brought in *federal* courts, co-tortfeasor employers had paid workmen's compensation benefits to injured workmen under the *federal* Longshoremen's and Harbor Workers' Compensation Act. (33 U.S.C.A. § 901 et seq.) No contention was made that state law applied to those wholly federal actions, matters, and transactions. In each case the losing shipowner argued that the federal courts should adopt a rule of contribution similar to that later announced by California in *Witt* v. *Jackson.* The United States Supreme Court declined to adopt such a rule. We recognize that the court in *Pope & Talbot, Inc.,* held that application of the doctrine of contribution would frustrate the purpose of the Longshoremen's and Harbor Workers Compensation Act. But there again, understandably, the court was defending the substantive rights of the parties under a federal statute, a consideration which as we have pointed out, has no application to the claim here at issue.

It becomes unnecessary to resolve other theories urged by defendant Pacific Far East Lines in support of the portion of the judgment under appeal.

The decision appealed from, described in the notice of appeal as the "judgment as amended nunc pro tunc," is affirmed. Purported appeals taken from related nonappealable orders are dismissed.

Molinari, P. J., and Weinberger, J.,* concurred.

The petition of the claimant and appellant for a hearing by the Supreme Court was denied March 8, 1973. Sullivan, J., did not participate therein.

---

*Assigned by the Chairman of the Judicial Council.