55 P.(2d) 34

**TILLIAN v. ATCHISON, T. & S. F. RY. CO.**

**No. 4056.**

Supreme Court of New Mexico.

Dec. 13, 1935.

On Rehearing Feb. 10, 1936.

Hanna & Wilson and Wm. A. Brophy, all of Albuquerque, for appellant.

Reid & Iden, of Albuquerque, for appellee.

BRICE, Justice.

This suit was brought by appellant against the appellee to recover compensation under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, for an injury done in the course of his employment. The case was tried to a jury and at the close of the evidence a verdict was directed by the trial court for the appellee. From the judgment entered upon the verdict, this appeal has been taken.

It is admitted by the parties that the appellant was an employee of the appellee, railway company, engaged in interstate commerce, and injured in the course of his employment, and he is therefore entitled to recover under the Federal Employers' Liability Act, § 1 (45 U.S.C.A. § 51), if the injury to him resulted "in whole or in part from the negligence of any of the officers, agents, or employees" of appellee unless the risk was assumed by him. Baltimore & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 44 S.Ct. 165, 68 L.Ed. 433.

■ As the judgment is based upon an instructed verdict, the evidence must be considered most favorably for appellant. In other words, if there is substantial evidence from which the jury would have been justified in returning a verdict for the appellant, then the case should be reversed, with directions to the district court to grant a new trial. Caviness v. Driscoll Const. Co., 39 N.M. 441, 49 P.(2d) 251. The facts with reference to the injury, deduced from the record, are substantially as follows:

The appellant was a warehouse employee of the appellee at its station in Gallup, N. M. His duty, among others, was to load and unload cars and transfer freight, in which matters he was foreman with two subordinates working under him. On the date of his injury, he and one of his subordinates (he directing the work) were transferring from one car to another an interstate shipment, consisting of five bundles of steel bars of ten or twelve pieces in a bundle and two pieces of steel shafting each about one-half inch in diameter and twenty feet long, and one piece three inches in diameter and fourteen feet long. In doing this the shafting was placed on a flat truck which had a flange at each corner at the front that would ordinarily keep the shafting from rolling off, and which, so appellant testified, could not have rolled off unless a severe force had been applied to them. The truck with the load of steel bars had been pulled and pushed into a warehouse, and, after clearing the doorway, had been turned so as to travel east down the center of the warehouse lengthwise between stacks of freight, where it was momentarily stopped. At the time the accident occurred appellant was stooping pulling from the front and his fellow servant was stooping over, pushing from the back. Evidently it required quite a bit of power to move the truck with its load. There was nobody touching the shafting except Tomach, the fellow servant, at the time it rolled off. Instead of pushing on the truck, he had one hand at the end of the shafting and the other on top of the shafting and endeavored to move the truck by pushing on the shafting. When the bars rolled off the truck, one of them broke appellant's leg. Tomach testified that he pushed straight ahead and did not push sideways; that he did not know whether the manner in which he pushed caused the shafting to roll off or not. He stated:

"I just grabbed hold of the iron and started to shove and the bars started to roll off.

"Q. Had the truck started to move before the bars rolled? A. Just started to move then. I don't think we moved over two feet.

"Q. And the bars rolled off on the left hand side? A. Yes, Sir.

"Q. And then without any notice from Mr. Tillan, without him saying anything you shoved, did you? A. Yes, I started to shove.

"Q. And the truck started to move? A. Yes, Sir.

"Q. And was that the time when the bars began to fall? A. Yes, Sir."

There was no protection to keep the bars from rolling off the truck excepting a small flange at each side of the truck, one inch or more high, which ordinarily would have prevented the shafting from rolling off the truck. There were other trucks that could have been used that had standards or guards on the sides that would have prevented the accident. No witness seemed to know or at least did not testify as to the cause of the shafting rolling from the truck.

Appellant's action was brought to recover under section 51 of title 45 U.S.C.A., the material parts of which are as follows: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, tract, roadbed, works, boats, wharves, or other equipment."

The primary question of whether the court erred in instructing a verdict for appellee requires consideration of four secondary questions: (1) Was there sufficient evidence before the jury to warrant them in finding appellee guilty of actionable negligence? (2) Was there a fatal variance between the allegations of negligence in the complaint and proof introduced? (3) Did the appellant assume the risk of sustaining this particular injury? (4) What would be the effect of appellant's contributory negligence, if any?

■ (1) It is contended, first, that appellant has not established any negligent act on the part of appellee, its officers, agents, or employees, that was the proximate cause of his injury; that the record does not show what caused the bars to roll from the truck, and any conclusion that it was the act of Tomach "would be mere conjecture if this case had gone to a jury." Midland Valley R. Co. v. Fulgham (C.C.A.) 181 F. 91, 95, is cited in support of this doctrine, in which Judge Sanborn spoke for the court, stating: "Conjecture is an unsound and unjust foundation for a verdict. Juries may not legally guess the money or property of one litigant to another. Substantial evidence of the facts which constitute the cause of action in this case of the alleged defect in the lift pin lever and the coupler is indispensable to the maintenance of a verdict sustaining it."

However, this doctrine does not preclude the jury from considering the circumstances given in evidence, and if there is substantial evidence from which they are authorized to infer the cause of the injury, it would not be conjecture. True, there is no positive evidence by the declaration of a witness to establish the cause of the shafting rolling from the truck; but appellee's witness, Tomach, testified in regard to the

truck having been stopped and turned within the warehouse and then stated in regard to starting it moving again: "I just grabbed hold of the iron (meaning the shafting) and started to shove and the bars started to roll off." He further testified that it could not have gone more than two feet. This testimony is such that the jury would have been warranted in inferring that his grabbing hold of and shoving the bars of iron caused them to roll off, for, according to his testimony, they immediately began to roll as he began to shove them. Whether this was an act of negligence was a matter entirely for the jury and not the court.

(2) Appellee further contends there is no evidence to establish the allegations of negligence as charged in the appellant's complaint. It cites the text of 20 R.C.L. 177, which reads as follows: "Having pleaded specifically the act or acts constituting the defendant's negligence, other acts of negligence cannot be relied upon, unless the declaration, complaint or petition is amended to conform to the proof."

The allegation of negligence is as follows: "That while the plaintiff was then and there so pulling and said Charles Tomach then and there so pushing said hand truck so loaded with said steel shafting or bars, the said Charles Tomach negligently and carelessly pushed said hand truck and steel shafting or bars so loaded thereon, with force into and against the jamb of an open doorway leading from the aforesaid platform into the freight house of defendant, in such a manner that the said steel shafting or bars rolled from the aforesaid hand truck on to and upon the left foot and leg of this plaintiff. * * * "

It is urged there is no evidence to establish that Tomach pushed the truck into and against the jamb of the open doorway in such manner that the steel shafting or bars rolled off and broke the appellant's leg, and therefore there is a fatal variance between the allegations and proof of negligence. It is true that the evidence does not precisely follow the allegations of the complaint as to the manner in which the injury occurred, but in view of section 105-601, Comp. St.Ann. 1929, which reads as follows: "No variance between the allegation in the pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. When it shall be alleged that a party has been so misled, the facts shall be proved to the satisfaction of the court, showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just," we think that the variance is immaterial. There is nothing in the record to show that appellee was misled to its prejudice in maintaining its defense upon the merits. Section 105-603, Comp.St.Ann. 1929, is as follows: "Where, however, the allegation of the cause of action or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall

not be deemed a case of variance within the last two sections, but a failure of proof."

Nor is there such a variance as would amount to a failure of proof. Epstein v. Waas, 28 N.M. 608, 216 P. 506. About the only difference is that it is alleged the fellow servant pushed the truck and shafting with force into and against the jamb of an open doorway, in such manner that the bars rolled from the truck and broke appellant's leg, whereas it might reasonably be inferred from the evidence that Tomach pushed the shafting, thereby causing it to roll off the truck and break the appellant's leg. Whether such pushing sent the shafting direct to the floor or first struck a door jamb could not have misled the appellee. There was no objection to the evidence on the ground of a variance, and if there had been, the court, under section 105-602, Comp.St.Ann.1929, would have permitted an amendment to conform to the facts. Nikolich v. Solvenska Nardona Podporna Jednota, 33 N.M. 64, 260 P. 849.

(3) Appellee further contends that appellant assumed the risk of being injured in the course of his labors for which he was employed. That he was foreman and directing the work and had ordered Tomach to shove from behind; that he saw the manner in which Tomach was pushing on the shafting and never objected thereto or stopped him.

It is true, appellant testified that he saw Tomach starting to push with his hands on the shafting and he may have been negligent in not stopping him, though not necessarily so. From the evidence, the jury might easily infer that the pushing on the shafting and its falling from the truck was so nearly simultaneous that appellant would not have had time to either stop Tomach or get out of danger.

The risks that an employee assumes are all clearly settled by the Supreme Court of the United States. In Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas. 1915B, 475, it was held that the federal act did not wholly abolish the defense of assumption of risk as recognized and applied at common law, but that it had the effect of abolishing the common-law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff. Also, see, Reed v. Director General of Railroads, 258 U.S. 92, 42 S.Ct. 191, 66 L.Ed. 480, in which is cited Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A. (N.S.) 44, to the effect that: " 'The rule that the negligence of one employee resulting in injury to another was not to be attributed to their common employer, is displaced by a rule imposing upon the employer responsibility for such an injury, as was done at common law when the injured person was not an employee.' "

It is stated in Chicago, R. I. & P. R. Co. v. Ward, 252 U.S. 18, 40 S.Ct. 275, 276, 64 L.Ed. 430, "The federal Employers' Liability Act places a coemployee's negligence, when it is the ground of the action,

in the same relation as that of the employer upon the matter of assumption of risk."

The risks that are assumed by an employee under the federal act are those ordinarily incident to his employment and do not include those caused by the negligence of fellow servants. Rocco v. Lehigh V. R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743. That question should have been submitted to the jury under appropriate instructions.

(4) If the appellant was guilty of contributory negligence in that he did not object to Tomach's pushing on the bars or in any other particular, it can only be considered in determining the amount of the verdict, as under the federal act the question of contributory negligence is not a complete defense. Chicago, R. I. & P. R. Co. v. Ward, supra.

It follows that the district court erred in instructing a verdict for appellee, for which error the cause is reversed and remanded, with instructions to grant to appellant a new trial.

It is so ordered.

SADLER, C. J., and HUDSPETH and ZINN, JJ., concur.

BICKLEY, J., dissents.

### On Rehearing.

BRICE, Justice.

1. We are satisfied that the question of negligence was one for the jury. Illinois Central R. Co. v. Porter, 207 F. 311, 315 (C. C.A. 5th Ct.). It was contended in that case the question of negligence should have been taken from the jury. There was testimony, as here, tending to prove the work was done in the usual and ordinary manner, but the court said: "Evidence that the work was being done at the time in question 'in the usual and ordinary way' was not evidence that negligent conduct such as charged in this case was the usual and ordinary method of doing the business. The natural inference would be that such negligence of a fellow trucker was outside the usual and expected. The risk of such negligence was not, in our opinion, assumed by decedent, and this without reference to any construction of the Employers' Liability Act. The defendant's requests based upon the theory of such assumption of risk were, we think, properly refused, as not supported by a proper construction of the testimony in that respect."

2. The only other matter necessary to review is whether the appellant assumed the risk of his injury. The federal courts have definitely fixed rules for determining this question. It has been many times before the Supreme Court of the United States and the rules laid down in Chesapeake & O. R. Co. v. De Atley, 241 U.S. 310, 36 S. Ct. 564, 566, 60 L.Ed. 1016, have been consistently cited as the settled law in subsequent decisions. We quote from this case as follows: "According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover

extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

Also see the following authorities: 2 Roberts Federal Liabilities of Carriers (2d Ed.) § 833; Chicago, R. I. & P. R. Co. v. Ward, 252 U.S. 18, 40 S.Ct. 275, 64 L.Ed. 430; Erie R. Co. v. Purucker, Adm'x, 244 U.S. 320, 37 S.Ct. 629, 61 L.Ed. 1166.

"In Southern Ry. Co. v. Gadd [C.C.A.] 207 F. 277 (decided May 6, 1913), we held that even at common law the employee did not assume the risk of the employer's negligence from an unusual and unexpected method of operation; that is to say, not incidental to the ordinary method. Evidence that the work was being done at the time in question 'in the usual and ordinary way' was not evidence that negligent conduct such as charged in this case was the usual and ordinary method of doing the business. The natural inference would be that such negligence of a fellow trucker was outside the usual and expected. The risk of such negligence was not, in our opinion, assumed by decedent, and this without reference to any construction of the Employers' Liability Act. The defendant's requests based upon the theory of such assumption of risk

were, we think, properly refused, as not supported by a proper construction of the testimony in that respect." Illinois Cent. R. Co. v. Porter (C.C.A.) 207 F. 311, 315; Seaboard Air Lines Ry. v. Horton, 233 U. S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A. 1915C, 1, Ann.Cas.1915B, 475.

"It is contended that the state court erred in permitting a recovery under the Federal statute for the reason that the injury resulted from Skaggs' own act, or from an act in which he participated. The company, it is said, 'cannot be negligent to an employee whose failure of duty and neglect produced the dangerous condition.' It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents, or employees of the employing carrier, or by reason of any defect or insufficiency, due to its negligence, in its property or equipment. April 22, 1908, 35 St. 65. But, on the other hand, it cannot be said that there can be no recovery simply because the injured employee participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier, and, if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act. That is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a co-employee in the

performance of his duty, that neglect must be`attributed to the employer; and if the injured employee was himself guilty of negligence contributing to the injury, the statute expressly provides that it 'shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' " Illinois Cent. R. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 250, 60 L.Ed. 528.

■ The rule may therefore be stated to be: (1) If the injury was, in whole or in part, the result of the negligence of a servant of the employer, it is liable, notwithstanding the employee was himself guilty of contributory negligence. (2) In the latter case the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. (3) The employee need not exercise any care to discover dangers not ordinarily incident to his employment and may assume that his fellow servant is exercising proper care with respect to his safety. (4) All are subject to the condition, that if the want of care of the fellow employee and the resulting danger is so obvious that an ordinarily careful person, under the circumstances, would have observed the one and appreciated the other in time to have sought safety and thus prevented his injury, the result is attributable solely to his own negligence and he cannot recover.

■ Assuming then that the question of appellee's negligence was for the jury to decide, the case resolves itself into this: If there is substantial evidence from which a jury could properly find or infer that the appellant as an ordinarily careful person would not have observed the negligence of his fellow employee or have appreciated the danger in time to have avoided the injury, the question of the assumption of risk was for the jury.

With the law as above stated in mind, we will review the evidence on this question.

The evidence justifies the following facts: The shafting in question was placed on a truck with a flat top, having small flanges at each of the front corners which would have prevented the shafting from rolling off unless severe force was applied to it. The appellant had hold of the truck at the left corner in front, pulling, and saw his fellow employee put his hands on top of the shafting "Kinda holding them together." He did not know he was going to push on the shafting, but saw him when he did push. Taking the evidence of appellant and appellee together, there is nothing from which we can conclude as a matter of law that the danger was so obvious that a reasonable person under the circumstances would have observed the want of care and have appreciated the danger in time to escape injury. In fact, the reasonable deduction from the evidence is that immediately upon his fellow employee's pushing on the shafting it rolled off and injured appellant. At least the evidence was such that the jury would have been warranted in finding that appellant did not

have time after discovering his fellow employee was pushing on the shafting to avoid the injury. We quote the following testimony (reduced to narrative form) of the only two witnesses who testified on this point:

### Appellant's Testimony.

"The flanges (at the front corners of the truck) would have prevented the shafting from rolling off. I had hold of the truck and was not touching the shafting. At the time they began to roll off I could see Charles Tomach pushing on the shafting. It was at this time or soon after that they started to roll. He had his hands on top of the shafting kinda holding them together and was in that position when the shafting began to roll. I was then facing Tomach and saw what he was doing. I did not tell him what to do. When we were ready to move I told him 'let's go' and to push. I knew he had hold of the truck or shafting and told him to 'let's go.' When I told him to push I did not know he was going to push on the shafting. They would not have rolled off unless a severe force had been applied to them."

### Testimony of Charles Tomach, Witness for Appellee.

"The appellant was directing the movements of the truck. The iron started to roll and I jumped back and before I knew it this iron was on top of Frank, on his left foot. There was nothing to prevent the iron from rolling off the truck. I don't know whether the manner in which I pushed caused the steel to roll off the truck.

I just grabbed hold of the iron and started to shove and the bars started to roll off. The floor in that place is a wooden, plank floor, full of knots and pretty rough. The appellant did not tell me to push, I just took for granted the stuff had to get moving. I worked around there long enough to know. I had one hand on one end of the bar and the other on top and without any notice from appellant or his saying anything I started to shove and the truck started to move. I had hold of the longest bar and in that position shoved off and that was when the bars tumbled."

Tomach also testified he pushed straight ahead, and not "sideways either way," but as he was standing at the side of the bars and "shoving," he would be a marvel of exactness if he was so precisely perfect in his "shoving," as not to vary to the right or the left. The jury might question his accuracy both in the perfection of his work and in remembering long after the precision with which it was done.

We are unable to say that appellant as an ordinarily careful and prudent man should have discovered his danger in time to have avoided the injury; that was for the jury to decide.

The case should have been submitted to the jury as decided in our original opinion, and the order therein made will be enforced.

SADLER, C. J., and HUDSPETH and ZINN, JJ., concur.

BICKLEY, J., dissents.